951 So.2d 397 (2007)
STATE of Louisiana
v.
Kevin M. DELAUNE.
No. 06-KA-682.
Court of Appeal of Louisiana, Fifth Circuit.
January 16, 2007.
*398 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Vincent Paciera, Jr., Assistant District Attorneys, Twenty-Fourth Judicial District, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and FREDERICKA HOMBERG WICKER.
MARION F. EDWARDS, Judge.
Defendant-appellant, Kevin M. Delaune ("Delaune"), appeals his conviction for armed robbery in violation of LSA-R.S. 14:64. We affirm.
His case was tried before a twelve-person jury which found him guilty as charged. Delaune was originally sentenced to imprisonment at hard labor for ninety-nine years without benefit of parole, probation, or suspension of sentence. The State of Louisiana ("the State") filed a multiple bill alleging Delaune to be a fourth felony offender, a bill to which Delaune stipulated. The trial court vacated the original sentence and re-sentenced him to imprisonment at hard labor for ninety-nine years without benefit of probation or suspension of sentence.
The victim, seventy-nine-year-old Philip Bultman ("Mr. Bultman"), testified at trial that, on September 23, 2004, he visited his wife at a nursing home and then went to *399 his house at approximately 6:15 p.m. When he went into his bedroom, he noticed that his windows were unlocked. Mr. Bultman walked over to two coffee cans where he kept quarters and pennies and observed that a handful of the quarters were missing. Mr. Bultman asked Delaune, a young man whom he had befriended eighteen years earlier, and who had been staying with him for the past week, if he had borrowed his quarters.
After Delaune denied having taken anything, Mr. Bultman took a shower and went to a movie with a friend. However, Mr. Bultman indicated that he locked his bedroom door prior to leaving the house. When Mr. Bultman returned home from the movie at approximately 10:45 p.m., he saw Delaune outside the house smoking a cigarette. Mr. Bultman went inside and sat down at the dining room table to make a telephone call. As Mr. Bultman picked up the telephone, he saw "something coming down" out of the corner of his eye.
Mr. Bultman testified that Delaune hit him on the head violently with a club, and that the blood began gushing from his wound. Mr. Bultman fell off the chair and screamed, "Kevin, what are you doing, son?" Delaune raised his hand again and hit Mr. Bultman in the back of the head with the club. Mr. Bultman screamed at defendant to stop hurting him, but defendant continued beating him and saying, "Where is the money? I want the money." When Mr. Bultman understood that Delaune wanted money, he pointed toward his bedroom and half crawled, half staggered there while reaching for his keys to open the bedroom door.
Before Mr. Bultman could open the door, Delaune kicked the door in, breaking the door frame in the process. Delaune pushed Mr. Bultman over to one of the twin beds and forced him to grab the bed post. He then took Mr. Bultman's belt and an extension cord and tied him up. Afterwards, Delaune put duct tape on Mr. Bultman's mouth and again asked, "Where is the money?" Mr. Bultman noted that Delaune must have placed the extension cord and duct tape in the bedroom, because Mr. Bultman did not have those items in there before.
In response to the questions regarding the money, Mr. Bultman pointed to his wallet, which Delaune took, afterwards leaving the premises. Mr. Bultman laid there a while, and when he did not hear anything, he arose from the bed and staggered to the home of his neighbor, Kenny Graef ("Mr. Graef'), who called 911. When the police arrived, Mr. Bultman informed them of what had transpired. Mr. Bultman was taken to East Jefferson General Hospital where he received fifteen stitches in his head and remained there until the following afternoon.
Mr. Graef testified at trial as to the details of Mr. Bultman's condition once he arrived at the Graef house, and that the victim told him that Delaune had hit him.
Detective Dax Russo ("Det. Russo") of the Jefferson Parish Sheriff's Office testified that he went to the hospital to meet with Bultman, who identified Delaune as the perpetrator. After locating Delaune in Florida, he and another officer went there, picked up Delaune and drove him home. When they returned to the detective bureau, Det. Russo read him his rights. Delaune waived them and gave a statement which was played for the jury.
In his statement, Delaune said that he did not remember much regarding the incident with Mr. Bultman. He stated that Mr. Bultman came home and they were talking about a movie Mr. Bultman had seen. Delaune stated that he and Mr. Bultman "got into it I guess" and that he might have hit Mr. Bultman one time. He *400 indicated that he then took Mr. Bultman's vehicle without his permission and left after the incident (although he did not remember leaving), and when he woke up, he was on the side of the road in Alabama. Delaune did not remember how many times he hit Mr. Bultman, and he did not think he had anything in his hands when he did so. He also did not remember taking any money from Mr. Bultman, nor did he remember tying Mr. Bultman's hands together and tying him to the bed and gagging him. Delaune said he did not remember much because he had smoked five or six rocks of crack cocaine (worth between $50 and $100) that night. Since the night of the incident, he had kept Mr. Bultman's car and was working in Florida.
After the State rested its case, the defense called Mr. Bultman as a witness. When asked how the duct tape and electrical cord could have gotten into his bedroom prior to the attack, Mr. Bultman opined that Delaune could have put them in there when he went to take his shower prior to leaving for the movie.
After hearing the testimony and considering the evidence, the jury found Delaune guilty as charged.
The only issue on appeal is Delaune's contention that the trial court improperly denied his motion for a mistrial necessitated by defense counsel's conflict of interest. He argues that the trial court erred by not declaring a mistrial pursuant to LSA-C.Cr.P. art. 775(3) or (5), urging that the trial judge should have granted the motion and appointed new counsel for him after his counsel expressed hesitation in his ability to fully represent him.
After Mr. Graef, the first witness, testified during the state's case, Mr. Soignet, defense counsel, said he wanted to place something on the record. He explained that, when he first came in that morning, a gentleman approached him and said he was sorry and that they needed to get together and have lunch. Defense counsel said that he "somewhat" recognized the gentleman, but did not have a full recollection of who he was. After they recessed for lunch, he realized that the victim, Mr. Bultman, was the same gentleman whom he had spoken to that morning. He talked to Mr. Bultman again and asked him to refresh his recollection as to when they had met. Mr. Bultman reminded him that he had come forth in the past, in another case in which counsel represented Delaune, to speak on behalf of Delaune. Defense counsel then told the trial judge:
I know if I go forward with this trial I will do everything I can to represent the interest of my client, but it's going to require possibly an aggressive cross examination of the victim, whom I have a good respect for basically what he had done in the past. I think I can do what I have to do. I can't guarantee it. Uh, based upon that, Your Honor, and the potential conflict, I would ask for a mistrial and have this matter be reset and another attorney appointed.
The prosecutor responded that he did not see a conflict of interest, and he pointed out that there was nothing that defense counsel was being prevented from doing in his cross-examination of the victim or in his defense of this case. He conceded that there might be a conflict if defense counsel had represented the victim in an ongoing case wherein defense counsel might have information about the victim due to the representation. The prosecutor contended that there was no conflict of interest solely because defense counsel called the victim as a character witness for Delaune in another case.
Defense counsel stated, "First of all, I may have misrepresented that I called him. He came to me basically looking to *401 help Mr. DeLaune at that time. It's the perception, I think, as well as the possibility that I might not do what  everything I have to do that I'm concerned about. . . ."
When the trial judge asked Delaune how he felt about this matter, he responded that he would like to have a new attorney if possible. After hearing arguments of counsel and considering defendant's position, the judge denied the motion for mistrial stating:
All right. Clearly there's no conflict of interest in my opinion because the victim is not, or was not, has never been Mr. Soignet's client. No matter who the defendant's attorney is, the victim is always going to be a character witness or had been a character witness for the defendant, so we're always going to have that problem, and it's also clear that they know one another just from what I've heard so far in the evidence thus far. So that's just  that's just the way the facts fall. As far as your relationship with the witness or with the victim, I think it's obvious that you came across him in the course and scope of your job as an attorney  as a criminal defense attorney, you know. It's [sic] surprises me this is the first time it's happened. So the motion for mistrial is denied.
Defense counsel noted his objection, and the trial judge said:
All right. And my main reason is that, you know, even though you may require a cross examination of the victim, you feel like you can do your job even though, you know, you do question and obviously have advised your client to seek new counsel, but I appreciate you bringing this to my attention.
After Det. Russo testified in the State's case and a recess, defense counsel told the trial judge:
Again, Your Honor, I was concerned about any perception that I would go easy on the victim. When I walked out of the courtroom, he tapped me on the shoulder and says, "Thank you for being gentle with me." So if he had that perception, I'm concerned that somebody else might have the same perception. And again, I'm just  I'm putting all this on the record. 
The trial judge said to defense counsel that he had to do his job. He also pointed out that Mr. Bultman was the most gentle and sweetest person he had ever met in his life, and that no matter how hard defense counsel was on him, Mr. Bultman would have thanked him because Mr. Bultman was such a nice man. LSA-C.Cr.P. art. 775, in pertinent part, provides the grounds for a mistrial:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
. . . .
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law.
. . . .
(5) It is physically impossible to proceed with the trial in conformity with law.
. . . .
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. Whether a mistrial *402 should be granted is within the sound discretion of the trial court and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion.[1] The right of a criminal defendant to the assistance of counsel during the proceedings against him is a cornerstone of our legal system.[2] To be more than just a hollow right, our law requires that assistance of counsel be effective. As a general rule, therefore, Louisiana courts have held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant she is representing.[3]
The issue of conflicting loyalties usually arises in the context of joint representation, but it can also arise "where an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney."[4] In a pretrial context, regardless of how the conflict of interest issue arises, the trial court has two options to avoid a conflict of interest: appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel.[5] Failure to do one or the other in a case in which an actual conflict exists requires reversal.[6] As the Louisiana Supreme Court has stated, "If an actual conflict exists, there is no need for a defendant to prove that he was also prejudiced thereby."[7] The Louisiana Supreme Court has consistently held that a defense attorney required to cross-examine a current or former client on behalf of a current defendant suffers from an actual conflict.[8]
On the other hand, if the objection is made to the claimed conflict after trial, the defendant must show he was actually prejudiced.[9]
The Louisiana Supreme Court has defined an actual conflict of interest as follows:
If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to the other client.[10]
In the present case, the record shows that there was no actual conflict of interest as Mr. Bultman was not and had never been defense counsel's client. Therefore, defense counsel was not required to cross-examine *403 a current or former client on behalf of a current defendant, and he did not owe any duty to Mr. Bultman. The record indicates that defense counsel and Mr. Bultman did not have a close relationship as he did not even know who Mr. Bultman was at first. In fact, defense counsel did not show any substantive relationship with Mr. Bultman other than to say that he met him in a previous case. Further, there was no evidence that defense counsel's remote relationship with Mr. Bultman prevented him from presenting his trial strategy, nor was there any evidence that he was forced to pursue or tailor a different one. Defense counsel said he would do everything he could to represent the interest of his client and that he thought he could do what he had to do. A review of the record shows that defense counsel ably cross-examined all of the State's witnesses, and that his cross-examination of Mr. Bultman was thorough and proficient. Defense counsel even called Mr. Bultman as a defense witness.
In light of the record, we find no abuse of discretion in the denial of a mistrial by the trial court. This assignment of error is without merit.
We have reviewed the record for errors patent and find none.
For the reasons above, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] State v. Smith, 04-340 (La.App. 5 Cir. 10/26/04), 888 So.2d 280.
[2] State v. Franklin, 400 So.2d 616, 620 (La.1981); State v. Cisco, 01-2732, pp. 17-18 (La.12/3/03), 861 So.2d 118, 129-30, cert. denied, 541 U.S. 1005, 124 S.Ct. 2023, 158 L.Ed.2d 522 (2004).
[3] Id.
[4] State v. Tart, 94-0025 (La.2/9/96), 672 So.2d 116, 125, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996); State v. Kirkpatrick, 443 So.2d 546, 552 (La.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984).
[5] State v. Cisco, supra.
[6] Id.
[7] State v. Franklin, supra.
[8] See, e.g. State v. Carmouche, 508 So.2d 792, 804 (La.1987).
[9] State v. Tart, 672 So.2d at 125 (relying on Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).
[10] State v. Kahey, 436 So.2d 475, 485 (La.1983); State v. Cisco, supra, as set forth in Zuck v. Alabama, 588 F.2d 436 (5th Cir.1979), cert denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979).