DREW, J.
 

 11 After a bench trial, Cameron Diggs was convicted of aggravated rape and armed robbery. The trial court imposed a sentence of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence for aggravated rape, to be served concurrently with 30 years at hard labor without benefit of probation, parole, or suspension of sentence for armed robbery. The defendant now appeals. We affirm, remanding only to provide the appropriate written notice to the defendant of the sex offender registration requirements.
 

 FACTS
 

 Shortly before 5:00 a.m. on May 25, 2006, M.W.
 
 [1]
 
 was delivering magazines to the rear entrance of a grocery store on Line Avenue in Shreveport. A man wearing a stocking cap brandished a gun, entered her delivery truck and repeatedly demanded money from her. When M.W. told the man she didn’t have any money, he pointed his gun up “in the air” and “clicked it.” M.W. then gave him approximately $50.00 from her purse and her cell phone because she feared for her life. Next, the man forced her to perform oral sex on him. He then raped her vaginally.
 

 Shortly thereafter and in the same general area, another woman, K.M., reported an armed robbery and aggravated rape. DNA evidence collected from both K.M.’s and M.W.’s sexual assault crime examination kits was consistent with a DNA reference sample obtained from the defendant.
 

 The defendant was charged in a four-count superseding indictment with:
 

 12* Count One — aggravated rape of M.W.;
 

 • Count Two — armed robbery of M.W.;
 

 • Count Three — aggravated rape of K.M.; and
 

 • Count Four — armed robbery of K.M.
 

 On November 13, 2007, the state amended the superseding indictment to reflect the correct last name of the victim of Counts Three and Four to another six-letter, two-syllable name beginning with the same two letters. The defendant was re-arraigned, whereupon he waived his right to a jury trial.
 

 At trial, the state first called M.W., and then called Herman McGee, a bread salesman who witnessed some of the events surrounding the crimes against M.W.
 

 When the state called K.M., defense counsel recognized her as a person with whom she had a professional relationship. The case was continued to the next day, at which time defense counsel:
 

 • moved for a mistrial on all four counts based on La. C. Cr. P. art. 775(3)— that there was a legal defect in the proceeding which would make any judgment entered upon a verdict reversible as a matter of law;
 

 • explained that she had a personal relationship with K.M. because K.M. was her counselor at a self-help clinic;
 

 
 *676
 
 • stated that the relationship would affect her ability to properly cross-examine K.M. on behalf of the defendant;
 

 • explained that she had conferred with the defendant and he agreed that a mistrial would be the best course of action because he would prefer a defense attorney who did not have a prior relationship with a victim; and
 

 |s* observed that she would be put in a precarious position as a possible witness to the issue of her relationship if she were to disagree with the evidence presented.
 

 An evidentiary hearing was held on the motion for mistrial, at which Stephanie Mosley, a victims’ coordinator for the district attorney’s office, testified that:
 

 • K.M. told her that she knew counsel from a place she used to work, but that they “were not friends”;
 

 • she (Mosley) told counsel the week before trial that one of the victims said she knew her;
 

 • defense counsel asked the victim’s name, wondering about a similarity in last names;
 

 • she (Mosley) told defense counsel that the victim said that they were not really “friends or anything”;
 

 • the victim also told her (Mosley) that she thought counsel was a nice person; and
 

 • counsel did not seem to recognize the identity of the victim.
 

 The state also presented the testimony of K.M., who testified that:
 

 • she was counsel’s weight-loss counsel- or approximately three years before trial;
 

 • there was no attorney-client relationship;
 

 • she did not have a close friendship with defense counsel;
 

 • their relationship did not extend outside the weight-loss sessions;
 

 • she met for counseling sessions with counsel approximately twice a week, discussing food, eating habits, and personal issues such as lifestyle;
 

 • she verified that counsel preferred her to the other weight-loss counselors;
 

 • she acknowledged that she considered their relationship to be confidential;
 

 14* she considered counsel to be “very nice”; and
 

 • she (K.M.) never shared any confidences with defense counsel.
 

 Defendant presented no testimony at the hearing on the motion for mistrial. Defense counsel argued that the conflict with K.M. was personal to her and not K.M., placing a possible impediment as to how she would fare in her cross-examination of K.M. Defense counsel argued that her relationship with K.M. was not just a casual acquaintance, but was “substantive.” She further argued that it would be “inappropriate” to order a partial mistrial.
 

 After hearing argument, the trial court granted a partial mistrial with regard to Counts Three and Four involving victim K.M., ruling that a mistrial was supported by the law and evidence, though the actual conflict may or may not exist.
 

 The trial court denied the motion for mistrial with regard to Counts One and Two, finding no conflict of interest with victim M.W.
 

 Trial continued on Counts One and Two, resulting in the defendant’s conviction of aggravated rape and armed robbery.
 

 DISCUSSION
 

 Mistrial
 

 Defendant assigns as his sole error the trial court’s failure to grant a full mistrial under these circumstances.
 

 The state argues that:
 

 
 *677
 
 • there was no actual conflict because there was never an attorney-client relationship between counsel and K.M.;
 

 |fi* the trial court acknowledged that there “may not be an actual conflict of interest”;
 

 • any conflict defense counsel had with KM. would not affect her ability to represent the defendant against the crimes involving M.W., with whom she had no relationship; and
 

 • there is no showing of substantial prejudice.
 

 The mistrial was sought and granted based on La. C. Cr. P. art. 775(B), which provides that a mistrial may be ordered when there is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law.
 

 Our law on reviewing conflict questions relative to multiple defendants and mistrials is well settled.
 
 [2]
 

 hln
 
 State v. Delaune,
 
 06-682 (La.App. 5th Cir.1/16/07), 951 So.2d 397, 402,
 
 writ denied,
 
 2007-0385 (La.10/12/07), 965 So.2d 395, the court noted that the Louisiana Supreme Court has defined an actual conflict of interest as follows;
 

 If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take
 
 *678
 
 some action that could be detrimental to the other client.
 
 (Citations omitted.)
 

 The court in
 
 Delaune
 
 held that:
 

 • the trial court did not err in denying a mistrial;
 

 • the defense counsel’s calling of an armed robbery victim as a character witness for the defendant in another case was not a conflict of interest;
 

 • the victim was never counsel’s client, so he was not required to cross-examine a current or former client on behalf of the defendant and he did not owe any duty to the victim;
 

 • counsel and the victim did not have a close relationship;
 

 • counsel was neither prevented from presenting trial strategy, nor forced to pursue or tailor a different strategy;
 

 • defense counsel said he would do everything he could to represent the interest of the defendant and he could do what he had to do; and
 

 • counsel ably cross-examined all witnesses, his cross-examination of the victim was thorough, and counsel even called the victim as a defense witness.
 

 The court in
 
 State v. Kirkpatrick,
 
 443 So.2d 546 (La.1983), U.S.
 
 cert. denied,
 
 held that the defendant was not entitled to appointment of 17another attorney when his court-appointed attorney realized that he had rendered legal services to members of the victim’s family. The court reasoned that no member of the victim’s family appeared as a witness so as to cause a conflict of interest, and defense counsel’s familiarity with the victim’s family was so attenuated that he had to question the individual that he thought he recognized to confirm that she was related to the victim. Furthermore, with respect to the victim, counsel did not know him, though he did venture that he probably had met him. Under these facts, the
 
 Kirkpatrick
 
 court found no conflict of interest.
 

 It is clear in the instant case that the trial court did not err in denying the motion for mistrial on Counts One and Two with regard to victim M.W., with whom counsel clearly had no relationship, actual or perceived.
 

 Partial Mistrial
 

 Neither the state nor the defense has set forth any legal authority allowing (or disallowing) the granting of a partial mistrial-that is, the granting of a mistrial on some but not all of the counts charged in the indictment. The state cites cases in which the trial court has granted a mistrial on some but not all of the counts in instances when the jury has been unable to agree on a verdict under La. C. Cr. P. art. 775(2). See
 
 State v. McCain,
 
 583 So.2d 160 (La.App. 3d Cir.1991),
 
 writ denied,
 
 588 So .2d 1115 (La.1991).
 
 [3]
 

 |sIn
 
 State v. Mitchell,
 
 319 So.2d 357, 358-359 (La.1975), the court discussed the trial court’s power to grant partial relief when there were several grounds in the motion to quash. It reasoned:
 

 Article 3 of the Louisiana Code of Criminal Procedure provides:
 

 “Where no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions.”
 

 As to the court’s authority, Article 17 provides in part:
 

 “A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may
 
 *679
 
 be necessary or proper in aid of its jurisdiction.... ”
 

 In
 
 State v. Edwards,
 
 287 So.2d 518 (La.1973), in interpreting the Code of Criminal Procedure in an instance where it was silent, this Court stated:
 

 “The provisions of our Code of Criminal Procedure are intended ‘to provide for the just determination of criminal proceedings.’ They are to be construed ‘to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable delay.’ ” La.Code Crim. Proc. art. 2.
 

 * * *
 

 “Where the law is silent in such cases, the inherent authority of the court would permit a rule of reason requiring the proceedings to be conducted with dignity and in an orderly and expeditious manner. La.Code Crim. Proc. art. 17.”
 

 Harmless Error
 

 Harmless error analysis begins with the premise that the evidence is otherwise sufficient to sustain the conviction if viewed from the perspective of a rational factfinder and asks whether beyond a reasonable doubt the Rerror could not have contributed to the verdict actually returned. See
 
 State v. Haddad,
 
 1999-1272 (La.2/29/00), 767 So.2d 682, U.S.
 
 cert. denied.
 
 The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
 
 Sullivan v. Louisiana,
 
 508 U.S. 275, 113 S.Ct. 2078,124 L.Ed.2d 182 (1993).
 

 As argued by the state, it was permissible, but not required, for all four offenses to be joined in the same indictment under La. C. Cr. P. art. 493. Furthermore, La. C. Cr. P. art. 495.1 allows for the severance of joined offenses and separate trials when it appears that a defendant is prejudiced by joinder. Clearly, there was little chance for prejudice here because the defendant was tried before a judge only. It would stand to reason that since all four counts were not required to be joined in the same indictment, the trial court had the power to grant partial relief in a case such as the one
 
 sub judice,
 
 where the Louisiana Code of Criminal Procedure is silent on the procedure to be followed. Furthermore, any error would have been harmless because the guilty verdict actually rendered in this trial was surely unattributable to the error.
 
 Sullivan v. Louisiana, supra.
 
 The evidence of the defendant’s guilt presented at trial was clearly sufficient. No trial error occurred in the denial of a full mistrial.
 

 ERROR PATENT
 

 The trial court failed to inform the defendant of the sex offender notification and registration requirement as required under La. R.S. 15:543. hnThe defendant’s conviction of aggravated rape, a violation of La. R.S. 14:42 and a “sex offense” under La. R.S. 15:541(14.1), requires that defendant be subjected to the sex offender notification and registration requirements under Louisiana’s sex offender laws. La. R.S. 15:542. Additionally, La. R.S. 15:543 requires that the trial court notify a defendant convicted of a sex offense in writing, using the form contained in La. R.S. 15:543.1, of the registration and notification requirements. It further requires that such notice be included on any guilty plea forms and judgment and sentence forms provided to defendant, and that an entry be made in the court minutes stating that the written notification was provided. The record does not indicate that the defendant was provided with any judgment
 
 *680
 
 and sentence form, or orally informed by the trial court of his registration requirements at his conviction and sentencing. As a result, remand is required for the purpose of providing the appropriate written notice to the defendant of the sex offender registration requirements.
 
 State v. Scott,
 
 42,997 (La.App. 2d Cir.2/13/08), 975 So.2d 782.
 

 DECREE
 

 The defendant’s convictions and sentences are affirmed. We hereby remand this matter to the trial court so it can provide the appropriate written notice to the defendant of all sex offender registration requirements, and for the requisite minute entry confirming that provision.
 

 CONVICTIONS AND SENTENCES AFFIRMED; CASE REMANDED FOR COMPLIANCE WITH LA. R.S. 15:543.
 

 [1]
 

 . Victim confidentiality requirements are applicable to the instant case under La. R.S. 46:1844(W). This opinion will use the victims' initials instead of names.
 

 [2]
 

 . A mistrial is a drastic remedy to be invoked only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial.
 
 State v. Richardson,
 
 35,450 (La.App. 2d Cir.2/27/02), 811 So.2d 154;
 
 State v. Adams,
 
 30,815 (La.App. 2d Cir.6/24/98), 715 So.2d 118,
 
 writ denied,
 
 98-2031 (La.3/19/99), 739 So.2d 774. The decision to grant or to deny a mistrial lies within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of that discretion.
 
 State v. Richardson, supra; State v. Adams, supra.
 

 The right of every criminal defendant to have the assistance of counsel is basic to our legal system. U.S. Const, amend. VI; La. Const, art. I, § 13. This right is preserved to an indigent defendant through the requirement that an attorney be appointed to represent him.
 
 Gideon v. Wainwright,
 
 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963);
 
 State v. Kirkpatrick,
 
 443 So.2d 546 (La.1983), U.S.
 
 cert. denied; State v. Harper,
 
 381 So.2d 468 (La.1980). However, an indigent defendant does not have the right to have a particular attorney appointed to represent him.
 
 State v. Kirkpatrick, supra; State v. Harper, supra; State v. Rideau,
 
 278 So.2d 100 (La.1973).
 

 To be more than just a hollow right, our law requires that assistance of counsel be effective. As a general rule, therefore, Louisiana courts have held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant he or she is representing.
 
 State v. Delaune,
 
 06-682 (La.App. 5th Cir.1/16/07), 951 So.2d 397,
 
 writ denied,
 
 2007-0385 (La.10/12/07), 965 So.2d 395, citing
 
 State v. Franklin,
 
 400 So.2d 616 (La.1981);
 
 State v. Cisco,
 
 01-2732 (La.12/3/03), 861 So.2d 118, U.S.
 
 cert. denied.
 

 The issue of conflicting loyalties usually arises in the context of joint representation, but it can also arise “where an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney.”
 
 State v. Cisco, supra,
 
 citing
 
 State v. Tart,
 
 93-0772 (La.2/9/96), 672 So.2d 116, U.S.
 
 cert denied; State v. Kirkpatrick, supra.
 
 In a pretrial context, regardless of how the conflict of interest issue arises, the trial court has two options to avoid a conflict of interest: appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel.
 
 Tart, supra.
 
 Failure to do one or the other in a case in which an actual conflict exists requires reversal.
 
 Holloway v. Arkansas,
 
 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978);
 
 State v. Carmouche,
 
 508 So.2d 792 (La.1987) (on reh’g). As stated in
 
 Franklin, supra,
 
 at p. 620, "If an actual conflict exists, there is no need for a defendant to prove that he was also prejudiced thereby.”
 

 [3]
 

 . Again, the instant trial was a bench trial, pursuant to a waived jury.