769 So.2d 183 (2000)
STATE of Louisiana, Appellee,
v.
Dale Leon SANDERS, Appellant.
No. 33,778-KA.
Court of Appeal of Louisiana, Second Circuit.
October 4, 2000.
*185 Louisiana Appellate Project by Carey J. Ellis, III, Paula C. Marx, Counsel for Appellant.
Richard Ieyoub, Attorney General, Don M. Burkett, District Attorney, H. Melissa Sugar, Assistant District Attorney, Counsel for Appellee.
Before STEWART, CARAWAY and DREW, JJ.
STEWART, J.
A unanimous jury found the defendant, Dale Leon Sanders, guilty as charged on one count of attempted second degree murder, a violation of La. R.S. 14:30.1(A)(2), arising from the defendant's act of shooting into a crowd from a vehicle. The defendant argues that the evidence was insufficient to support the verdict, that a juror engaged in misconduct during deliberations, and that the ten-year sentence is excessive. We hereby affirm the defendant's conviction and sentence.

FACTS
On the night of August 16, 1998, the defendant, armed with a pistol, was a passenger in a car driven by Travis Jackson. Kenyarda Perry was a passenger in the back seat. The young men drove by the house of Harry McKinney, with whom Jackson and the defendant had earlier engaged in an altercation over some stolen CD's. The defendant opened the car's right front door, leaned out, and fired several shots into a group of four young men in which Harry McKinney was standing. One of the bullets hit Titus Burrell in the chest. Burrell recovered, but lost his spleen. At trial, the defendant admitted that he fired the shot, but he denied having a specific intent to kill the victim, Burrell.

DISCUSSION
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the *186 reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.

Sufficiency of the Evidence
By assignment of error, the defendant argues that the evidence, which he claims was "very conflicting," "inconsistent," and "suspect," was insufficient to support a finding beyond a reasonable doubt that he possessed the requisite specific intent to kill. Alternatively, the state urges that the evidence supports a finding that defendant had a specific intent to kill.
Specific intent to commit a crime is an element of an attempted offense. La. R.S. 14:27. Hence, a conviction of an attempted offense must rest upon sufficient proof that the offender actively desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. La. R.S. 14:10, 14:27. See State v. Parish, 405 So.2d 1080 (La.1981), on remand, 429 So.2d 442 (1983).
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (1989).
In State v. Milligan, 28,660 (La.App.2d Cir.12/11/96), 685 So.2d 1127, we upheld a conviction for second degree murder after the defendant fired a pistol at the victim in his departing vehicle, even though the defendant claimed he intended to fire only at the vehicle.
Furthermore, in State v. Butler, 618 So.2d 572 (La.App. 2d Cir.1993), we upheld a conviction for two counts of attempted first degree murder in a drive-by shooting where the defendant fired five to eight shots into a crowd of people while yelling gang slogans. Those circumstances indicated the defendant had the specific intent to kill more than one person. Butler, supra.
In this case, the evidence reveals that the shooting in question was preceded by an argument between Travis Jackson, the driver of the vehicle involved in the shooting and Harry McKinney, Jr., a resident of the home where the shooting occurred. The argument concerned the alleged theft of CD's from Jackson's car. After the argument, Jackson and some friends, including Kenyarda Perry and the defendant, drove by McKinney's house. Perry was in the left rear passenger seat of Jackson's car, and the defendant was in the right front seat. According to the testimony, on the first pass by McKinney's house, someone threw a bottle at the car. On the second pass, someone threw two bottles at the car. The defendant contends that he heard a gunshot. The men drove away, but drove by again. The defendant opened the door and shot a gun but claims that he was not shooting to hurt anybody "because if [he] was shooting to hurt somebody [he] wouldn't have been in the car." The defendant asserts that it was completely dark at the time of the shooting. He further asserts that he did not know that anyone had been injured. Moreover, the defendant argues that he "fired to scare them off...."
On the other hand, the evidence shows that the defendant armed himself with a *187 dangerous weapon intentionally. Before firing into a crowd, he expressed his intent to "get" one of the men in the crowd. Before firing, a fellow passenger in the car told the defendant not to shoot. The defendant made the effort to open the car door to obtain a view of his target. He shot into a crowd of four men, firing at least two shots. One of the shots missed the man the defendant said he was going to get, but struck the victim. All of this occurred while the defendant was slowly cruising at night in an automobile. Under the reasoning of Milligan and Butler, supra, this evidence is such that any rational trier of fact could have found the essential elements of the crime charged were proven beyond a reasonable doubt. Defendant, having a specific intent to kill a human being, did an actthe firing of a pistol into a crowdwhich tended directly toward the accomplishment of his object. This assignment of error lacks merit.

Motion for New Trial Juror Misconduct
By assignment of error, the defendant argues that the trial court erred by denying his motion for new trial which alleged that the jurors were improperly influenced by comments made by the jury foreman with regard to his personal experience as the victim of a drive-by shooting. In essence, the defendant argues that by speaking about his personal experiences, coupled with references to information garnered from his wife, a nurse, about the difficulties one encounters from the loss of the spleen, the foreman's comments constituted extraneous information that rose to the level of juror misconduct. The trial court ruled that the foreman's comments did not constitute an outside influence and denied the motion. We agree.
Courts distinguish between cases in which the defendant alleges misconduct among the jurors, and those cases where the defendant alleges misconduct involving an extraneous influence. See State v. Sinegal, 393 So.2d 684 (La.1981); State v. Horne, 28,327 (La.App.2d Cir.08/21/96), 679 So.2d 953, writ denied 96-2345 (La.02/21/97), 688 So.2d 521. As this court stated in State v. McLemore, 26,106 (La. App.2d Cir.06/24/94), 640 So.2d 847, 859, writ denied, 94-1908 (La.12/09/94), 647 So.2d 1107, cert. denied, 514 U.S. 1116, 115 S.Ct. 1974, 131 L.Ed.2d 863 (1995):
Any unauthorized communication, contact, or tampering directly or indirectly, made by a nonjuror with a juror during a trial about the matter pending before the jury is deemed presumptively prejudicial, if not made in accordance with rules of court and the instructions and directions of the court made during the trial, with full knowledge of all the parties. The presumption is not conclusive, but the burden rests heavily upon the state to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to defendant. Prejudice may be shown by evidence that an extrinsic factual matter tainted the jury's deliberations. Thus, an adequate demonstration of extrinsic influence upon the jury overcomes the presumption of jury impartiality and shifts the burden to the state to show that the influence demonstrated was not prejudicial.
Essentially, an impermissible "outside influence" is an unauthorized communication or overt act by a third party which creates an extraneous influence on the jury. However, even if such acts occur they are subject to harmless error analysis. Sinegal, supra.
In this case, the allegedly improper conduct involved only the foreman's personal testimony of a situation similar to the matter now before the court. There was no extraneous influence. The foreman spoke about his knowledge of the ways of the world. Moreover, even if this communication was impermissible, it constituted only harmless error. This assignment of error lacks merit.

Excessive Sentence
By assignment of error, the defendant argues that his sentence of 10 years *188 at hard labor is excessive. Sentencing occurred on October 7, 1999. The defendant's untimely motion to reconsider was filed on or about November 17, 1999. The defendant argues that the trial court should have given more weight to the mitigating factors and the victim's testimony. The alleged mitigating factors are that defendant's prior felony, possession of cocaine, was a non-violent crime; defendant was 19 at the time of the offense; and he accepted responsibility for his actions by apologizing to the victim. The victim and his mother testified on the defendant's behalf at the sentencing hearing and, in effect, recommended leniency, or at least that the defendant's punishment be equivalent to that imposed on his co-defendants who pled guilty to lesser charges without going to trial and received light sentences.
When a defendant fails to file a timely La.C.Cr.P. art. 881.1 motion to reconsider sentence the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164; State v. Barnes, 607 So.2d 872 (La.App. 2d Cir. 1992). Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992).
The defendant faced a sentence of 10 to 50 years without benefits. The sentence imposed is the absolute bottom of that range. The incident in question involved the shooting of an unarmed, bystander victim. We find that the sentence is neither illegal nor shocking to the sense of justice. This assignment of error lacks merit.

Error Patent Review
We further note that the trial court correctly informed the defendant that the prescriptive period for filing for post-conviction relief is three years. However, the period has been amended to two years. La.C.Cr.P. art. 930.8. We hereby affirm the trial court's decision with instructions that the trial court send appropriate written notice to the defendant within 30 days of the rendition of this opinion and to file proof of the defendant's receipt of such notice in the record of the proceedings. State v. Mock, 602 So.2d 776 (La.App. 2 Cir. 1992); State v. Smith, 600 So.2d 745 (La.App. 2d Cir.1992).

CONCLUSION
For the reasons just discussed, we hereby affirm the defendant's conviction and sentence with instructions.
AFFIRMED WITH INSTRUCTIONS.