ON REHEARING
BROWN, Chief Judge,
On Rehearing.
1 )The facts and procedural history of this case have been throughly set forth in the initial opinion and dissent. We granted rehearing to revisit this court’s reversal of Bobby Higginbotham’s convictions and sentences based upon the two-judge majority’s holding that the granting of a partial mistrial, that is, the granting of a mistrial on some but not all of the counts charged, was clear error. The majority found that “a partial mistrial is not recognized in the criminal code apparently for the same policy expressed in (C.Cr.P.) Article 770(2) (remarks to the jury directly referring to another crime), which in mandatory terms requires a complete mistrial.” We now vacate and set aside this court’s original opinion and after considering the other assignments of error raised by defendant on appeal affirm defendant’s convictions and sentences.

Discussion

Partial Mistrial

In January 2007, Bobby Higginbotham took office as the Mayor of the Town of Waterproof, Louisiana. Waterproof is a Lawrason Act municipality, La. R.S. 33:321 et seq., in Tensas Parish. In February 2009, a Tensas Parish grand jury returned a forty-four count indictment charging Higginbotham with twenty-one counts of felony theft, eighteen counts of malfeasance in office, four counts of public salary deduction and one count of unauthorized use of a moveable.
Immediately before opening statements, the prosecutor amended the indictment to reduce the charged offenses to only three counts-one count of malfeasance in office, one count of felony theft, and the prosecutor amended Lone count of malfeasance in office (original Count One) to a charge of *20 public contract fraud. Notably, the amended count previously read:
[Defendant] did commit Malfeasance in Office by violating R.S. 42:1112, by purchasing goods and services and instructing Town of Waterproof employees to purchase goods and services from a business or entity in which he/and or immediate family members has [sic] a personal substantial economic interest, in the approximate amount of $56,582.57, ■all in violation of R.S. 14:134.
After the amendment, the count read:
[Defendant] did commit Public Contract Fraud, by using his power or position by instructing Town of Waterproof employees to purchase goods and services for the Town of Waterproof from a business or partnership of which he is a member, all in violation of R.S. 14:140.
During the presentation of the state’s case, Robert “Bobby” Trahan, a senior auditor with the Legislative Auditor’s office, testified that in May 2008, he went to Waterproof to investigate why the Town had not submitted financial statements for the fiscal year ending in June 2007 as required by law. He explained that the Mayor was prohibited by law from causing the Town to have a transaction with a business owned by the Mayor or an immediate family member. Trahan discovered “a number of charges” on the Town credit card at Higginbotham Place, a business allegedly owned and operated by the May- or. This was the basis of the public contract fraud count.
The auditor also found charges on the Town’s credit card for airline travel to Los Angeles, Chicago and Las Vegas. The auditor testified that, when he asked the Mayor whether these were personal expenses or related to Town business, Higginbotham first said that he did not know but later admitted that they were personal matters. This pertained to the malfeasance |scount on which defendant was convicted. The felony theft count involved Higginbotham increasing his salary from $12,000 to $86,000 yearly without approval from the Board of Aldermen.
The next witness for the state was Ted Higginbotham who is defendant’s brother. The recording equipment for the courtroom malfunctioned, and thus there is no record or transcript of Ted Higginbotham’s testimony. The next witness was Dr. Glenda Richardson, who was a business associate of defendant. Because of the malfunction with the recording equipment, this witness’s testimony on direct examination was not recorded, so there is no transcript of that part of her testimony. The transcript commences at a point during cross-examination of the witness by defendant. This witness answered questions from defendant about defendant’s ownership interest in the business, Higginbotham Place. On re-direct, the witness told the jury that Bobby Higginbotham owned “that store” despite the signatures of the witness and Ted Higginbotham on a partnership agreement.
The state rested its case after two days of trial. Defendant requested a continuance which the trial court denied. The next day, this court granted Higginbotham’s writ application and allowed him a 30-day continuance.
During the delay, the trial court discovered that something had gone wrong with the recording equipment. As stated, the prosecution had presented evidence in support of the public contract fraud charge against defendant, which included the testimony of defendant’s brother, Ted Higginbotham, and defendant’s business partner, Dr. Glenda Richardson. Because of the error in the court’s recording equipment, Ted bHigginbotham’s testimony and *21 much of Dr. Richardson’s testimony were not recorded. Defendant moved for a mistrial. The state agreed to a mistrial as to the public contract fraud count. The trial judge granted a mistrial as to that count but denied defendant’s motion for a mistrial as to the other two counts. The exhibits pertaining to the public contract fraud charge were removed from the record, and the jury was admonished to disregard the testimony and the exhibits.
Defendant filed a writ application with this court, which affirmed the trial court’s action. Thereafter, defendant’s writ to the supreme court was denied, with Justice Johnson dissenting. State v. Higginbotham, 11-0564 (La.05/06/11), 60 So.3d 621.
La. C. Cr. P. art. 775 provides in pertinent part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
[[Image here]]
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
[[Image here]]
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
The mistrial granted in this case on the public contract fraud count was appropriate. As to the other two counts, in State v. Diggs, 43,740 (La.App. 2 Cir. 12/10/08), 1 So.3d 673, 678-679, writ denied, 09-0141 (La.10/02/09), 18 So.3d 101, this court stated:
Neither the state nor the defense has set forth any legal authority allowing (or disallowing) the granting of a partial mistrial-that is, the granting of a mistrial on some but not all of the counts charged in the indictment. The state
cites cases in which the trial court has granted a mistrial on some but not all of the counts in instances when the jury has been unable to agree on a verdict under La. C. Cr. P. art. 775(2). See State v. McCain, 583 So.2d 160 (La.App. 3d Cir.1991), writ denied, 588 So.2d 1115 (La.1991)
[[Image here]]
Where the law is silent in such cases, the inherent authority of the court would permit a rule of reason requiring the proceedings to be conducted -with dignity and in an orderly and expeditious manner. La. Code Crim. Proc. art. 17.
[[Image here]]
It would stand to reason that since all four counts (two separate victims of aggravated rape and armed robbery) were not required to be joined in the same indictment, the trial court had the power to grant partial relief in a case such as the one sub judice, where the Louisiana Code of Criminal Procedure is silent on the procedure to be followed.
This court in State v. Diggs, 1 So.3d at 679, then concluded that:
[Fjurthermore, any error would have been harmless because the guilty verdict actually rendered in this trial was surely unattributable to the error.
A mistrial is a drastic remedy to be invoked only when defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. State v. Richardson, 35,450 (La.App.2d Cir.02/27/02), 811 So.2d 154; State v. Adams, 30,815 (La.App.2d Cir.06/24/98), 715 So.2d 118, writ denied, 98-2031 (La.03/19/99), 739 So.2d 774. The decision to grant or to deny a mistrial lies within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of that discretion. Id. Likewise, the deter *22 mination of whether an admonition will adequately cure any prejudice, and assure a fair trial, lies within the sound discretion of the trial court. State v. Jeffers, 623 So.2d 882 (La.App. 2d Cir.1993).
In State v. Busby, 94-1354 (La.App. 3d Cir.04/05/95), 653 So.2d 140, 146, writ denied, 95-1157 (La.9/29/95), 660 So.2d 854, the defendant was charge with three counts of molestation of three different juveniles. The state |fiput on evidence as to all three counts; however, at the end of the state’s case, the prosecutor dismissed one of the counts. The appellate court held that:
The state’s ease as to count one and count two was supported by the testimony of the two young victims, who graphically described the defendant’s actions, e.g., one victim’s testimony clearly described forced fellatio. Their testimony, in turn, was supported by evidence adduced from the examining physician and the investigating officers. Sufficient evidence was presented to prove the elements of the charged crimes beyond a reasonable doubt ... any prejudice resulting from the dismissal of count three was harmless beyond a reasonable doubt. Since defendant was not entitled to a mistrial, his attorney was not ineffective in failing to move for a mistrial. (Emphasis added).
In the case sub judice, the auditor’s testimony concerning purchases made at the store as well as the missing transcription of the two witnesses’ testimony regarding ownership of the store were not overly prejudicial. The jury was admonished to disregard all of this evidence.
We note that the question of defendant’s guilt was clearly proven beyond any reasonable doubt. In fact, defendant does not claim or assign as error that the evidence was insufficient. The partial mistrial in the other counts in Diggs and Busby concerned rape, armed robbery and child molestation. The one mistrial count in the instant case was public contract fraud. The evidence of defendant’s guilt of the remaining two counts was overwhelming and the guilty verdicts were surely unattributable to any error.
We find the same analysis applicable to defendant’s argument concerning the introduction of other crimes, wrongs, or acts and the mandatory mistrial under La. C.Cr.P. art. 770. Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the 17unrelated evidence establishes him or her as a “bad person.” La. C.E. art. 404(B)(1); State v. Jackson, 625 So.2d 146 (La.1993). This rule of exclusion stems from the “substantial risk of grave prejudice to the defendant” from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, 277 So.2d 126 (La.1973).
A trial court’s ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 (La.05/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). The erroneous introduction of other crimes evidence is subject to harmless error review. State v. Ruiz, 06-30 (La.App.3d Cir.05/24/06), 931 So.2d 472; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94.
The other crimes evidence in this case was an indicted count of public contract fraud. Obviously, defendant had notice. It likewise represented a modus operandi, a method of operation. In both the malfeasance count and the public contract fraud count, defendant used the Town’s credit card to enrich himself. We note in State v. Busby, supra, the state’s entire *23 case had been presented, and the defendant in Busby argued that the evidence already adduced as to the dismissed count was “other crimes” evidence which prejudiced the jury’s consideration of the remaining counts. La.C. Cr. P. art. 770(2) provides that upon motion of a defendant, a mistrial shall be declared when a remark or comment, made within the hearing of the jury , by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
|sIn our case, the other crime evidence would have been admissible under C.E. 404 B(l). The Third Circuit Court of Appeal in State v. Busby, supra, and this court in State v. Diggs, supra, found that any prejudice resulting from the dismissal of one count was harmless beyond a reasonable doubt.
There was no abuse of the trial court’s discretion in this case. We will now address the remaining assignments of error which were raised by defense counsel and Higginbotham on appeal.

Jury Selection

Defendant’s first and third assignments of error are intertwined complaints that the trial court allowed the state to excuse jurors based upon their race in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that the record is inadequate for this court to review this alleged error.
In the voir dire for , this six-person jury, defendant asserted that the state had excused five African-American jurors based upon their race. On appeal, defendant makes the bare claim that the trial court erred in allowing these jurors to be excused and argues that the record “is marked inaudible and does not reflect whether or not the trial court found a prima facie case of discrimination, undertook the analysis required by Batson or whether or not after hearing from the prosecutor, the trial judge denied or simply disregarded Mr. Higginbotham’s objection.”
The transcript of Higginbotham’s objection to the state’s use of peremptory challenges and the court’s handling of that objection appears to be abbreviated or incomplete. The material part of the record, from a Rsidebar conference, begins after the prosecutor exercised a back-strike against an African-American prospective juror. Even when there is an incomplete record of the proceedings, a defendant is not entitled to relief absent a showing of prejudice based on the missing portions of the transcript. State v. Castleberry, 98-1388 (La.04/13/99), 758 So.2d 749, cert. denied, Castleberry v. Louisiana, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999); State v. Hawkins, 96-0766 (La.01/14/97), 688 So.2d 473; State v. Rodriguez, 93-0461 (La.App. 4th Cir. 03/29/94), 635 So.2d 391, writ denied, 94-1161 (La.08/23/96), 678 So.2d 33.
In Batson, the Supreme Court held that an equal protection violation occurs if a party exercises a peremptory challenge to exclude a prospective juror on the basis of a person’s race. The Supreme Court reaffirmed its position that racial discrimination in jury selection offends the Equal Protection clause of the- 14th Amendment in Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). Louisiana law codifies the Batson ruling in La. C. Cr. P. art. 795.
The trial court’s responsibility when' presented with a Batson challenge was detailed by the Louisiana Supreme Court in State v. Anderson, 06-2987 (La.09/09/08), 996 So.2d 973, 1004, cert. denied, Anderson *24 v. Louisiana, 556 U.S. 1165, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009):
If defendant makes a prima facie showing of discriminatory strikes, the burden shifts to the state to offer racially neutral explanations for the challenged members. If the race-neutral explanation is tendered, the trial court must decide, in step three of the Batson analysis, whether defendant has proven purposeful discrimination. The race-neutral- explanation need not be persuasive or even plausible. Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006), quoting Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). It will be deemed race-neutral unless a | ^discriminatory intent is inherent in the explanation. The ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory challenge. State v. Tyler, 97-0338, (La.09/09/98), 723 So.2d 939, cert. denied, 526 U.S. 1073, 119 S.Ct. 1472, 143 L.Ed.2d 556 (1999).
The trial court’s findings with regard to a Batson challenge are entitled to great deference on appeal. State v. Tyler, supra; see also, State v. Juniors, 03-2425 (La.06/29/05), 915 So.2d 291. When a defendant voices a Batson objection to the state’s exercise of a peremptory challenge, the finding of the absence of discriminatory intent depends upon whether the trial court finds the prosecutor’s race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor’s demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy. Miller-El v. Dretke, supra.
In this case, the state did give race-neutral reasons for the strike-back challenges. Unfortunately, the appellate record does not reflect whether the trial court made an initial finding of a prima facie case, or whether the court itself required any further explanation from the prosecutor of the use of his peremptory challenges. However, once the prosecutor offers a neutral reason for a peremptory challenge, the question of whether defendant had made a prima facie showing of intentional discrimination is rendered moot. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); State v. Sparks, 88-0017 (La.05/11/11), 68 So.3d 435, cert. denied, El-Mumit v. Louisiana, — U.S. -, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012).
As outlined above, the determination that a party has made a prima facie case and that the proffered reasons are, or are not, race-neutral is a function of the trial court, who has the benefit of being in the presence of the jurors and the prosecutor. What is clear is that the prosecutor did give race-neutral reasons for the challenges and that the trial court did not require | ^further explanation. By its proceeding with the trial, the court implicitly denied defendant’s Batson objection.
A review of voir dire is instructive. The transcript of the state’s back strikes shows that the state peremptorily challenged jurors Diane Perry, Willie Percy and Patrick McCraney. According to the prosecutor in brief, the other two African-American jurors who were excused were Amanda Gales and Johnny Coleman.
The first of these jurors was Diane Perry. Ms. Perry reported that she had been a child care worker for 18 years and that her husband, formerly a farmer, was unemployed. Ms. Perry knew defendant and, in fact, had been employed “at his store in Waterproof back there” in 1999. She said that her acquaintance with defendant would not affect her ability to be fair *25 and that she would not be afraid to vote for either side. She also said that she could vote “guilty” if she believed that defendant was guilty. She explained that, if the Mayor repaid the Town any of the money he allegedly took, that would be “good” or “better,” but that his taking of the money should still be a crime.
The second juror was Amanda Gales. Ms. Gales’ boyfriend was incarcerated and facing criminal charges and according to her, he “was supposed to appear for today.” When questioned, she said that she did not have any bias against the Sheriffs Office or the prosecutor because of that pending charge; she said, “because if you have evidence and you have proof, then that’s all that matters.”
The third juror was Johnny Coleman, a truck driver and farmer in Pineville. The state had information that Coleman had a pending felony 112charge for second degree battery in Catahoula Parish. Coleman was unclear about the current status of his case, saying that he had not been to court since December 2003, that the case may have been “discontinued” and that he would have to look at the records to know. The state exercised a peremptory challenge after the issue could not be conclusively resolved.
The fourth juror was Willie Percy, a maintenance worker for the Tensas Parish School Board. Percy had also worked for the Town of St. Joseph as a patrolman. He had a conviction for possession of marijuana in 1975. He said that he had no “axe to grind” with the state and that his offense was a misdemeanor. When asked whether his prior law enforcement experience would work against defendant, he gave no audible response, but the prosecutor clarified that Percy said that he would consider defendant innocent until proven guilty.
The fifth juror was Patrick McCraney, a truck driver from Newellton. His wife worked for the Community Head Start in St. Joseph. McCraney’s wife, Marilyn, was also on the prospective jury panel. During her voir dire, she said that she would hold the state to a higher burden of proof than required by law because “I’ve dealt with Mr. Higginbotham, and ah, he’s been, I mean, he’s done a lot for Head Start.” By contrast, McCraney said that he could return a verdict of guilty for defendant if the state could prove its case beyond a reasonable doubt.
After reading the transcript of voir dire, we find that the trial court did not err in rejecting defendant’s Batson challenges.

Motion to Quash

11sDefendant challenged the jury venire as a whole (i.e., not the selected jury) on the grounds that the venire disproportionately underrepresented African-Americans. At the hearing on this motion, defendant asserted that only 40% of the 150-person jury pool was African-American, yet the racial makeup of the parish was nearly equal between African-Americans and whites.
Defendant argued that only 40% of the jury pool was African-American, but the Clerk of Court for Tensas Parish testified that the pool, going back to 2005, was 49.8 percent African-American and 48.5 percent white, and the particular jury pool available for defendant’s trial was 52% African-American and 47% white. Further, defendant had no proof that any “alleged” underrepresentation was due to systematic exclusion of African-Americans; the clerk explained that the drawing of the pool was done randomly by computer from voting and Department of Motor Vehicle records.
Defendant failed to show that the representation of African-Americans in the Ten-sas Parish jury venire was not fair and reasonable in relation to the number of *26 such persons in the community. See Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). The motion to quash was properly denied.

Disqualification of Counsel

As noted above, in March 2009, the district court disqualified defendant’s retained attorney, Karl Koch, from representing defendant in this criminal case because it found that the attorney had a conflict of interest due to his concurrent representation of the Town of Waterproof, the victim |14of the alleged offenses by defendant. Higginbotham sought supervisory review in this court, which granted the application and affirmed, agreeing that the attorney had a conflict of interest.
On appeal, defendant argues that the trial court violated his right to counsel of his choice, a structural error that cannot be harmless and requires reversal.
This issue was fully litigated in 2009, well before trial. Typically, a court will not revisit an issue on appeal that has previously been decided on a writ application granted on the merits; this is the “law of the case” doctrine. State v. Holder, 44,386 (La.App.2d Cir.10/28/09), 25 So.3d 920; State v. Hunter, 39,664 (La.App.2d Cir.06/29/05), 907 So.2d 200, writ denied, 05-2027 (La.03/10/06), 925 So.2d 507. Nothing in the record and no other developments in this prosecution require reexamination of this issue which was previously decided by this court. Defendant’s choice of Mr. Koch as his attorney was clearly unacceptable. Accordingly, this assignment of error is without merit.

Right to Counsel

Defendant argues that the trial court violated his right to counsel by forcing him to go to trial without an attorney and represent himself despite his protestations that he wanted to be represented by an attorney.
In State v. Dunn, 30,269 (La.App.2d Cir.02/25/98), 713 So.2d 479, 490-91, writ dismissed, 98-0978 (La.01/15/99), 735 So.2d 644, this court explained the right to counsel, the waiver thereof, and when a defendant’s conduct amounts to a waiver:
| isThe accused in a criminal proceeding has the right to assistance of counsel for his defense. U.S. Const, amends. VI, XIV; La. Const. art. I, § 13; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
[[Image here]]
A defendant must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings. State v. Seiss, 428 So.2d 444, 447 (La.1983). The accused’s unquestioned right to legal representation at his trial cannot be manipulated by him, by attempts at last-minute substitution or otherwise, so as to secure unwarranted delays or otherwise obstruct the orderly administration of justice. City of Baton Rouge v. Dees, 363 So.2d 530, 531 (La.1978). A defendant’s refusal to proceed with appointed counsel and to retain counsel on his own may constitute a waiver of the right to counsel. See State v. Harper, 381 So.2d 468, 471 (La.1980); State v. McGowan, 359 So.2d 972, 974 (La.1978); State ex rel. Johnson v. Maggio, 449 So.2d 547, 549 (La.App. 1st Cir.), writ denied sub nom., State v. Johnson, 450 So.2d 354 (La.1984). If an accused repeatedly fails to retain counsel for trial, or if he appears without counsel after being clearly and unequivocally warned by the trial court that the case will be tried regardless, such fact may support a finding of implied waiver. State v. Wisenbaker, 428 So.2d 790, 793 n. 10 (La.1983).
*27 This ease is a very atypical waiver of counsel case. After a review of the entire record, it is apparent that defendant’s un-counselled status through the first half of his trial was wholly his own choice, a decision made by his deliberate manipulation of his right to counsel in an effort to derail the orderly progress of the prosecution. At the outset, defendant retained ■ counsel with a clear conflict of interest, and once that attorney was excused from the case, defendant repeatedly and stubbornly refused either to retain an attorney or request that an indigent defender be appointed for him. Approximately two months before trial, the district judge patiently explained to Higginbotham, who has an advanced education including an M.B.A. degree, that he must either retain an attorney or request that the public defender be appointed before his next appearance in February 2010. At that next appearance, defendant told the court: ■
| wYour Honor, under advice of counsel, I’m gonna take the Fifth, under the U.S. Constitution. I have no comment to make to the Court until a counsel is enrolled. (Emphasis added).
Clearly at this time, defendant was receiving advice from one or more attorneys — -a fact he also admitted at his pauper hearing — yet he again deliberately chose neither to enroll an attorney for himself nor to request the appointment of the public defender.
At trial, after jury selection began, defendant requested the appointment of the public defender, but an examination of defendant’s finances led the trial court to conclude that defendant was not indigent and could afford to retain an attorney. On the evidence adduced in the record, that finding is not manifestly erroneous, and indeed defendant did retain an attorney to present a case after the recess in the trial.
As to defendant’s objection, the trial court stated, “This court is of the firm opinion that defendant has manipulated his right to counsel in an effort to delay or prevent trial.” The trial court’s conclusion is amply.supported by the .record. Defendant’s conduct was a deliberate attempt by him to disrupt the orderly proceedings, as was the case in the “implied waiver” cases cited in State v. Dunn, supra.

Standby Counsel

Defendant argues that the first public defender appointed to assist him, Leroy Smith, had a conflict of interest that precluded him from representing defendant, and that conflict carried over to the other attorneys employed by the public defender’s, office, including Jamie Crews who assisted defendant at trial.
117This conflict between defendant and Smith is not shown in the record and defendant’s argument on this point does not refer to any particular facts in the record to clarify the situation, although according to argument, Smith may have represented someone adverse to defendant in a car accident case.
■Although defendant voiced an objection early in the proceedings to the appointment of the public defender to represent him, at no time did defendant object to Smith’s participation or that of his standby counsel on the grounds that Smith had a conflict. Indeed, at the point when the conflict was first raised by Smith, defendant was, apparently, attempting to have an attorney from the public defender’s office appointed to represent him.
Because of the lack of an objection below, none of these attorneys were actually enrolled to represent defendant; there is no evidence that whatever conflict that may have existed affected the attorney’s performance See Mickens v. Taylor, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), and the nature of the conflict is not *28 well developed in the record-which it would have been had there been an objection. This assignment of error is without merit.

Refusal to Allow Defendant to Argue That His Prosecution was Politically Motivated by the Grant of State Motion in Limine

During the recess of the trial, the state filed a motion in limine seeking to exclude evidence or argument from defendant “about any information that may relate to the May 7, 2010, Second Circuit Court of Appeal ruling re-instating defendant as Mayor of Waterproof ... or about who is or who is not the Mayor of Waterproof.” In arguing on that motion, defendant urged that such a limitation would prohibit him from fully presenting a defense hsbecause, as defense counsel stated, “But what I’ve read, I believe a lot of it is politically motivated.” Counsel further argued, “The whole thing is about [what] he’s done in office. And the State arguing that’s illegal, his activities, which are not. And that’s what we hope to prove in this case. So we’re being limited in our ability to present that defense, if we can’t mention the fact that he is [sic] officially been placed back into office, which he really wasn’t legally taken out to begin with.”
The court did not grant the state’s motion in its entirety; rather, the court said that it would grant the motion:
[T]o the extent that I already have during opening, I believe it was during the opening statements, there was an effort to discuss political motivation and “this is a witch hunt” kind of argument. And that was disallowed already. So I think I would be changing my ruling if I said that now you can bring in political motivation and that kind of thing. So to that extent I will grant it and rule that it’s inadmissible. If there’re other things that counsel wish to discuss as we go along, about, you know, what’s admissible and what’s not, I’ll have to rule on it as it comes.
On appeal, Higginbotham argues the general rule that a defendant has the right to present a complete defense, and in his pro se brief, he argues that he was prosecuted for the irregularity with his salary while the Board of Aldermen were not prosecuted.
Generally, substantive issues of selective/vindictive or politically motivated prosecution are handled separately from the evidence that is adduced for defendant’s guilt. See, e.g., United States v. Berrigan, 482 F.2d 171, 175 (3d Cir.1973):
By both tradition and constitutional mandate the jury is given the responsibility of determining guilt or innocence according to instructions of law delivered by the court. The question of discriminatory prosecution relates not to the guilt or innocence of |19AppeIIants, but rather addresses itself to a constitutional defect in the institution of the prosecution.
Further, as stated by the court in United States v. Abboud, 438 F.3d 554, 580 (6th Cir.2006), cert. denied, 549 U.S. 976, 127 S.Ct. 446, 166 L.Ed.2d 309 (2006):
We wholeheartedly agree with Defendants’ argument that cross-examination plays a vital role in the adversarial system of our country, and the ability to show bias, motive, or prejudice on the part of a witness is an integral part of cross-examination. Defendants, however, seem to conflate the concepts of witness bias and selective prosecution. Witness bias speaks to “ ‘the reliability of the witness.’ ” Delaware v. Van Arsdall, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (quoting Davis v. Alaska, 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). When one ex *29 poses bias, motive, or prejudice of a witness, one is calling into question the credibility of that witness’s testimony. Selective prosecution is a separate and distinct claim that defendant has been unconstitutionally selected for prosecution.
Defendant did not file a motion to quash the prosecution on the grounds that it was politically motivated, or would such a motion likely have been successful. Defendant’s salary was set by ordinance at $12,000 per year, yet he paid himself $36,000 per year. The board members he complains about being treated differently apparently had a salary of $250 per month and paid themselves $500 per month, a figure significantly less than defendant’s “salary.” There is also no evidence that any of the board members used the Town credit card for luxury travel, dining and accommodations costing thousands of dollars, all at the Town’s expense.
A review of the entire transcript of the trial does not reveal any instance where defendant’s cross-examination of the witnesses was unduly curtailed, either before or after the court’s ruling on the motion in limine. Defendant was given ample leeway in cross-examining the state’s witnesses | ¡^and was allowed to probe any evidence of bias or prejudice they may have had in their testimony.
In his opening statement, defendant said, “I submit to you today that this defendant is a victim of a political witch hunt perpetrated by state officials, perpetrated by Board of Alderfmen] members, perpetrated by regular ordinary citizens, perpetrated by the District Attorney, the State Police, and others.” Finally, despite the court’s ruling, defendant was able to probe his allegations, through his questioning, that the prosecution was politically motivated. During cross-examination of John Gallagher, defendant questioned the witness about whether defendant was still identified in the Secretary of State’s website as the Mayor of Waterproof. Because defendant was not unduly restricted in his cross-examination of witnesses or in his own testimony, any error in the trial court’s rather limited restriction on defendant’s argument is harmless beyond a reasonable doubt.

Witness Sequestration

argues that the trial court erred by releasing former Alderman Elizabeth Cooper from the rule of seques-sequesat the end of her testimony during the state’s case and then refusing to allow him to recall her during his case-in-chief because she had listened to the testimony of other witnesses.
The purpose of sequestration is to assure that a witness testifies as to his own knowledge, to prevent witnesses from being influenced by the testimony of others, and to strengthen the role of cross-examination in developing facts. State v. Lucas, 39,419 (La.App.2d Cir.03/09/05), 896 So.2d 331; State v. Barber, 30,019 (La.App.2d Cir.01/21/98), 706 So.2d 563, writ denied, 98-1353 (La.10/09/98), 726 So.2d 24. The mere fact that a witness speaks to other witnesses does not establish a violation of the order of sequestration and does not show possible prejudice. State v. Strickland, 94-0025 (La.11/01/96), 683 So.2d 218; State v. Armstead, 432 So.2d 837 (La.1983); State v. Lucas, supra. Exclusion of witnesses is not an appropriate sanction without a showing of how. the infraction prejudiced the opposing side’s right to cross-examine the witness and develop needed facts in this case. State v. Lucas, supra.
A trial court’s exclusion of a witness dues to a sequestration violation may be an error that prejudices the defendant and *30 requires reversal. In this case, the trial court excused the witness and did not allow defendant to elicit testimony from her because “the Court excused her from the rule and her being in the courtroom during the testimony of the other witnesses.” According to the court in State v. Lucas, supra, a mere violation of the rule may not be enough without an accompanying showing of prejudice.
However, in this case, the difficulty with reviewing this assignment of error on appeal is that we do not know what the witness would have said had she been allowed to testify. For purposes of appellate review, a party may make a proffer of evidence, including testimony, that the trial court has excluded. See, e.g., State v. Dunn, 01-1635 (La.11/01/02), 831 So.2d 862, appeal after remand, 01-1635 (La.05/11/10), 41 So.3d 454; cert. denied, Dunn v. Louisiana, — U.S. -, 131 S.Ct. 650, 178 L.Ed.2d 480 (2010), (in which a proffer was made of the testimony of a witness excluded because of a sequestration violation; a review of the proffer revealed no prejudice to defendant). Without such a proffer to preserve the witness’s testimony for preview, it is exceedingly difficult for this court to determine whether defendant was prejudiced by the trial court’s action.
Because the record is inadequate to address this assignment, we hold that the record, as it stands, reveals no prejudice to defendant.

Amended Indictment

Defendant argues that the prosecutor amended the indictment in open court on March 30, 2010, the day after the first jurors were sworn in, and that this required the trial court to grant a mistrial. The state argues that the record shows that the indictment was amended on March 29, 2010, in a recess prior to the swearing of the first juror.
The record does include the voicing of an amendment to the indictment by the prosecutor on March 30, 2010, after jurors were sworn. However, the prosecutor’s statement includes the sentence, “And I think I explained it in chambers what the amendments are.” The trial judge who was present at the chambers conference said in his ruling denying defendant’s motion for mistrial that the amendment was done in chambers on March 29, 2010, in accordance with the chronology given by the state.
The amended indictment mostly dismissed a variety of charges against defendant; the substantive amendment changed one count of malfeasance in office to a charge of public contract fraud. Both the previous malfeasance and the public contract fraud charges were based upon the same operative facts: the Mayor’s alleged order to Town employees to buy fuel from the store in which the Mayor allegedly had an ownership interest.
Because the record does not support defendant’s contention that the amendment was initially done on March 30, 2010, after the jurors had beenj^sworn, there was no reason for the trial court to grant a mistrial. La. C. Cr. P. arts. 487, 761.

Jury Instruction

According to defendant, the trial court erred in refusing to give a requested jury instruction regarding circumstantial evidence. During discussion of the charge to the jury, the district court chose to exclude the proposed instruction, which read:
You cannot find defendant guilty solely on circumstantial evidence unless the facts proven by the evidence exclude every reasonable hypothesis of innocence.
*31 The court explained that the charge was being removed because “this is not, in my view, a circumstantial evidence only case.” Defendant objected to the exclusion of that charge.
The jury charge actually given stated: Evidence is either direct or circumstantial. Direct evidence is evidence which, if believed, proves a fact. Circumstantial evidence or indirect evidence is evidence which, if believed, proves a fact and from that fact you may logically and reasonably conclude that another fact exists.
Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Tate, 01-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); see also La. C. Cr. P. art. 802.
In this case, as the trial court recognized, the evidence against defendant consisted of both direct and circumstantial evidence. The state proved by direct evidence and beyond a reasonable doubt that the Mayor’s l^salary was never legally raised to the level of the salary he paid himself and that the Mayor took in excess of $500 of Town funds for personal purposes. Accordingly, the requested charge — while an accurate statement' of the law-had essentially no application to the facts as presented through the evidence adduced because this was not a “solely” circumstantial evidence case. The trial court did not err in refusing the requested charge, so this assignment of error is without merit.

Jury Polling Slips

This assignment of error concerns the presentation to the jury of polling slips. Defendant argues that the wording and design of the slips were a clear signal to the jurors as to what the court believed the correct and inevitable verdict to be.
As this Court recently explained in State v. Jones, 46,758 (La.App.2d Cir.12/14/11), 81 So.3d 236, 248:
Any private communication, direct or indirect, with a juror after the beginning of trial is deemed presumptively prejudicial, if not made with full knowledge of all parties and pursuant to court order or rule. State v. Bates, 508 So.2d 1346 (La.1987); State v. Sanders, 33,778 (La.App.2d Cir.10/04/00), 769 So.2d 183. The presumption is not conclusive, but a heavy burden rests upon the state to 'establish, after notice to and hearing of defendant, that such contact with the juror was harmless to defendant. State v. Sinegal, 393 So.2d 684 (La.1981); State v. Sanders, supra. Prejudice may be shown by evidence that an extrinsic factual matter tainted the jury’s deliberations. State v. Day, 414 So.2d 349 (La.1982); State v. Sanders, supra.
See also La. C. Cr. P. arts. 770 and 771.
Because this alleged error formed a significant part of defendant’s motion for new trial and because the trial judge responsible for the polling slips, as well as the other parties involved, including a juror, testified at the hearing on that motion, the record on this assignment is unusually complete. J^Given the testimony of the witnesses at the motion for new trial, it is clear that the polling slips-regardless of their flaws-had no effect whatsoever upon the jury’s verdict. The jury had already reached their verdict and had documented them on the verdict form prior to the delivery of the polling slips. Indeed, the unfortunate early delivery of the slips was prompted by notice from the jury, in the form of a knock on the door, that they had reached a verdict. The trial judge who *32 decided defendant’s motion for new trial correctly found that defendant suffered no prejudice from the presentation of the polling slips to the jurors before they announced their verdict in open court. Accordingly, this assignment of error is without merit.

Exculpatory Evidence

Defendant asserts that the prosecutor withheld exculpatory evidence from him in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, defendant’s argument in brief concerns the alleged failure of the Board of Aldermen to approve, by ordinance, their own salary increase from $250 to $500, and his allegation that these board members were thus guilty of felony theft. Defendant alleges that the state had in its possession, but refused to provide to him, a recording of a June 2007 board meeting containing “the proof of all salary increases.”
As the state noted in its May 14, 2010, response to defendant’s several belated discovery motions:
Upon information and belief, the State shows that there is no exculpatory information in this case. However, the State has provided copies of the cassette tapes which were seized from the Town of Waterproof to defendant. The micro-cassette tapes were copied to CD-Roms with all information provided on the micro-cassette tapes copied to the CD-Roms. The data is all there and it is certainly not useless.
lajThe state goes on to inform the court that it is recopying the microcassette tapes to other microcassette tapes, and recopying the identifying markings on the tapes and boxes, to provide to defendant.
The record does not reflect proof that the state withheld any information from defendant, and certainly there is nothing to indicate that the state withheld exculpatory information. This assignment of error is without merit.

Juror Challenge for Cause

Defendant complains that the trial court erred when it denied his challenge to venireman Harry Goldman, III, an attorney. Defendant first stated that he wanted to challenge the juror peremptorily, but later changed his challenge to one for cause, which the court denied on the grounds that the juror’s occupation as an attorney was not a basis for a cause challenge.
Jury selection was not overly long in this case. Defendant’s peremptory challenges were as follows: Gracie Jesseph, David Lutken, and Barclay Tullos. At that point the judge said that they had six jurors. Defendant was told that he still had three peremptory challenges.
After this exchange, despite the fact that the jury had been completed with six jurors, selection continued without discussion of an alternate. The next juror defendant challenged was Audrey Hemphill. To that challenge, the court responded, “Defense peremptory number 5.” Thereafter, the parties did not agree on any of the remaining jurors in the first panel of 12.
However, when the court informed the excused jurors from that first panel that they could leave the courtroom, the court excused venireperson Melinda Fuller. The record shows that the state originally accepted Ms. |g7Fuller and that defendant said, “Okay, that’s fine.” No explanation appears in the transcript for excusing this juror.
In the next panel, defendant peremptorily challenged juror Linda Outlaw. After a state challenge for cause, the next juror called was Harry Goldman, III. The record reflects:
Prosecutor: We would accept.
*33 Defendant: I don’t have any more challenges. Can I challenge for cause? That’s the lawyer. He’s a lawyer. And the law says that attorneys....
After the trial court denied defendant’s challenge for cause, Mr. Goldman was made a member of the jury.
Thus, the record suggests, but does not conclusively show, that defendant was allowed only five peremptory challenges rather than six.
However, the record strongly suggests that defendant exercised a peremptory challenge to excuse venireperson Melinda Fuller. There is no explanation in the transcript for the removal of Ms. Fuller, but the record shows that the parties had selected six jurors just prior to defendant’s apparent request to use a peremptory challenge to strike one of the previously accepted jurors, i.e., Melinda Fuller. From that point, the parties continued selecting jurors because they had selected only five jurors; thus, it seems reasonable to assume that the transcript simply does not reflect that defendant excused Ms. Fuller at the point where he apparently asked to strike one of the previously accepted jurors.
If defendant was actually denied one of his peremptory challenges, that is potentially a reversible error. However, it appears that the record is simply incomplete or inaccurate, perhaps because of something inaudiblejasaj it is in many other places in the transcript — and does not show that the trial court’s count of peremptory challenges is incorrect.

Recusal of District Attorney

Defendant complains that the trial court erred when it denied his motion to recuse the district attorney. Defendant filed two such motions, one on March 23, 2010, and one on March 29, 2010. He argues that the district attorney had a conflict of interest in that he represented the Town of Waterproof as the Town attorney at the beginning of defendant’s tenure as Mayor and that he also represented a client (another gas station owner in Waterproof) with a financial interest adverse to defendant. After a very extensive hearing, the trial court denied the motion. On the merits, the trial court found that the district attorney had not represented Higginbotham in this criminal case, so there was no valid reason to recuse him.
La. C. Cr. P. art. 681 provides:
A district attorney may recuse himself, whether a motion for his recusation has been filed or not, in any case in which a ground for recusation exists. A motion to recuse the district attorney shall be in writing and shall set forth the grounds therefor. The motion shall be filed in accordance with Article 521, and shall be tried in a contradictory hearing. If a ground for recusation is established the judge shall recuse the district attorney.
12c)La. C. Cr. P. art. 680 provides:
A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;
(2) Is related to the party accused or to the party injured, or to the spouse of the accused or party injured, or to a party who is a focus of a grand jury investigation, to such an extent that it may appreciably influence him in the performance of the duties of his office; or
(3) Has been employed or consulted in the case as attorney for defendant before his election or appointment as district attorney.
At the hearing, the district attorney said that he had been the Town attorney at the *34 beginning of 2007 when defendant was elected Mayor, but he said, “I never had any communications with Mr. Higginbotham short of me getting a letter that I was fired. So that being done, what we’re talking about are things he did after that period of time, by taking salary in excess of what had been approved by the Board and authorized by the Lawrason Act, which started in July of 07, long after I had, wasn’t affiliated with the Town of Waterproof.” The trial court’s examination of the facts in its ruling was quite thorough and its ruling finds strong support in the record.

Conclusion

This court’s original opinion is vacated and set aside. We reinstate defendant’s convictions and sentences and as reinstated, the convictions and sentences are affirmed.