896 So.2d 331 (2005)
STATE of Louisiana, Appellee,
v.
Rondall LUCAS, Jr., Appellant.
No. 39,419-KA.
Court of Appeal of Louisiana, Second Circuit.
March 9, 2005.
Rehearing Denied March 31, 2005.
*332 Johnson, Johnson & Johnson, by Eric G. Johnson, for Appellant.
Schuyler Marvin, District Attorney, Robert R. Smith, Assistant District Attorney, for Appellee.
Before WILLIAMS, STEWART and CARAWAY, JJ.
STEWART, J.
Rondall Lucas, Jr. ("Lucas") was convicted of obscenity, and sentenced to three years at hard labor. The three-year hard labor sentence was suspended, and the defendant was placed on three years active supervised probation with special conditions. Because we find that the trial court erred as a matter of law in excluding the defendant's witnesses for a sequestration violation, we reverse the defendant's conviction and sentence and remand for a new trial.

*333 FACTS
This matter was tried before a jury on February 11 and 12, 2004. Prior to the taking of testimony, the trial court placed all of the witnesses under the "Rule Of Sequestration," advising the witnesses that they would not be allowed in the courtroom to hear the other witnesses' testimony, that they could not "discuss the testimony of another witness with anyone," and that if they discussed their own testimony with either one of the attorneys, they had to do it outside the presence of the other witnesses. The first day, the defendant had four witnesses: Ron Lucas, Sr., Paula Lucas, April Hider, and Sonny Clary placed under sequestration.
At the trial of this case, Shannon Mack, an investigator with the Shreveport Police Department, Property Crimes Division, testified that around 3:30 p.m. on May 10, 2003, she was traveling west on the right lane of U.S. Highway 80, where it intersected with La. Highway 157, in the Haughton area. While Mack waited for a red light at that intersection, a dark blue truck turned west off of La. Highway 157 onto the left lane of U.S. Highway 80. As this truck turned onto U.S. Highway 80, Mack's light turned green, and she proceeded west. Because the truck was traveling much slower, Mack soon passed it.
Approximately 100 yards down the road, the truck accelerated and pulled up alongside Mack's vehicle. Mack slowed down to let the truck pass. As she slowed down, so did the truck to where it remained alongside of her vehicle. Thinking it was perhaps someone she knew trying to get her attention, Mack looked over at the truck. Her passenger side window was down. The driver's side window of the adjacent truck was up. It was tinted. Mack saw the driver of the truck had straightened his body out to "where his chin was pushed all the way into his chest ... the top of his pelvic [sic] was even or a little above his window. He had his right hand on his exposed penis. And he was moving it up and down and looking at me and smiling ..." Mack watched the scene for about a second and a half to two seconds, then slammed on her brakes, and the driver of the truck did also. Mack tried to slow down enough to get the license plate number from the truck, but the truck slowed down so much she couldn't get behind it. Mack called 911 on her cell phone to report the incident. As she made the call, she lost eye contact with the truck. She then made a u-turn in an attempt to get behind the truck. As she did so, the truck turned off into a trailer park. As Mack went east on U.S. Highway 80, the truck was coming out of the trailer park, waiting for the eastbound traffic to pass. Mack passed the truck, and for the first time, was able to get a clear view of the driver's face. At trial, Mack identified the defendant as the driver of the truck. The truck turned west, and the vehicles passed each other again. Mack made another u-turn and headed west to follow the truck. The truck also made another u-turn and headed east at a high rate of speed. Mack u-turned east and accelerated, but she was unable to catch up. By the time she came to a crest of a hill, the truck had vanished.
Mack went home and got her husband, Thomas Mack, a Bossier City police officer. He got his gun and badge, and the two went driving through nearby neighborhoods looking for the truck. On a hunch, Shannon Mack chose Ward Road as the road to look for the truck. As the two drove Ward Road, Thomas Mack would point out each truck and ask Shannon Mack if it was the truck. She kept replying "no" until they turned and went down Jennifer Lane. Shannon Mack also told her husband that the truck had a distinctive front license plate with some cursive writing *334 and some type of character on it, a sticker on the back window, and a chrome tool box.
At the defendant's home, Shannon Mack saw the defendant's truck backed into the driveway. She told her husband that was the truck. On the front plate, were the cursive name "Rondall" and a drawing of Mickey Mouse. Thomas Mack replied, "That's not dark blue, that's black." Shannon Mack told him, "No that's dark blue, that's the truck. I mean that, in my eyes was [sic] dark blue." Thomas Mack continued to insist the defendant's truck was black. Shannon Mack again called 911 to get an officer with jurisdiction to meet them at the defendant's home. Officer Cortez Bridges, Jr., with the Bossier Parish Sheriff's Office, met the Macks near the defendant's home. As they were talking to Officer Bridges, the defendant came out of his house. Shannon Mack identified him as the one that had exposed himself to her.
Officer Bridges testified that after he advised the defendant of the allegations, but before he could read the Miranda warnings, the defendant denied exposing himself. However, he admitted to seeing Shannon Mack on the highway stating that he thought she was a friend of his wife's, and that the only gesture that he had made toward her was like a wave.
After the Macks had testified, the state asked for a hearing outside the presence of the jury, regarding an allegation of a violation of the sequestration order by the defendant's witnesses. Monica Hudson, the Victim Assistance Coordinator for the Bossier Parish District Attorney's Office, testified that earlier that morning she saw the defendant's witnesses in the hallway. She described what she saw by saying, "I got a demonstration and laughing going on about ... the driving." When asked what demonstration did the witnesses give, Hudson testified, "Well, I think it [sic] was trying to duplicate what they said the defendant was doing because it [sic] had  he was pushed up."
When asked whether she heard the witnesses talk about the case, Hudson testified, "[t]hey were laughing. And I don't know what verbally was being said, but they were talking among themselves." After seeing the demonstration, Hudson immediately went to the bailiff to report the incident.
After Hudson testified, the trial court told the defendant's counsel, "Mr. Johnson, evidently you didn't listen to the Court's instructions when the Court instructed all the witnesses not to discuss the case with anyone.... Demonstrating and talking about how somebody performed something in a truck is discussing the case, Mr. Johnson."
Thereafter, Ron Lucas, the defendant's father, testified that he did not discuss the details of the case with the other witnesses during the course of the trial. Ron Lucas also testified that one witness, Sonny Clary, did not even know he was going to be called to testify until sometime around lunchtime. On cross, Ron Lucas testified he was sitting next to Clary. When asked if Clary was demonstrating something while beside him, Ron Lucas testified, "[h]e may have been. I don't know what he was demonstrating really.... I think he was trying to relate to an incident that happened sometime back to him or someone that he knew or something to that nature."
Cullen David "Sonny" Clary testified that he did not even know he was going to be a character witness for the defendant until he was called to come and testify sometime after lunch, and he did not even arrive at the courthouse until around 2:00 p.m. The transcript does not reflect when *335 Clary was placed under oath and under sequestration. Clary testified that he had not discussed the details of the case or his testimony with anyone out in the hallway, and did not recall giving some sort of demonstration of someone raising his pelvis up, while sitting with the other witnesses. On cross, Clary acknowledged that at some point, the bailiff came over and told the witnesses not to talk about the case. Clary testified they were not talking about the case, but were talking about a football half-time show.
When questioned by the trial court, Clary denied making any demonstration stating, "I've got arthritis and I've been sick and I just move my body...." Clary acknowledged to the trial court that he and Ron Lucas talked about Clary's son, but he denied doing any demonstration in the middle of the conversation.
April Rider testified that she had been with the defendant's other witnesses all day, and that she had not talked about the details of her testimony with any other witness. Rider denied seeing any "demonstration" by any of the other witnesses. On cross, Rider testified that she did not see Clary make any "certain bodily displays" or "particular bodily positions" in relation to the case. She did testify that Clary may have made some form of "body contortions" regarding either a football game or a halftime show. She stated she didn't know much of what was said because she was "pacing the floor."
The next witness was Paula Lucas, the wife of Ron Lucas. She testified that she did not discuss the details of the case with any other witness. As to her conversation with Clary, Paula Lucas testified that she hadn't seen him for some years and they were just catching up on children and past history. She testified Clary talked about his son. Clary also talked about the Super Bowl halftime show incident with Janet Jackson, and he was making some sort of demonstration about football when the "gentleman" came out and made a motion for them to quit. "We were laughing at that point and he said don't be talking about the case. I said we're not." Paula Lucas further testified that they were laughing about the Janet Jackson halftime show incident. When questioned by the trial court, Paula Lucas testified the demonstration Clary made was kicking his feet out while sitting down.
After Paula Lucas testified, a chair was placed in front of the trial court, and the state recalled Monica Hudson to demonstrate what she saw Clary perform. Hudson testified she could not do it since she was wearing a skirt, but she described how Clary's knees were further up towards his chin.
The trial court found that the witnesses had violated the court's rule of sequestration. The trial court further found, "I have no idea to what extent because nobody would be truthful." The trial court ruled, "I'm going to order that they not be allowed to testify for violation of the Rule of Sequestration. That would be the order of this Court." The trial court further ruled that since the witnesses violated the rule of sequestration, "the only thing the Court can do is limit their testimony based upon what they're going to testify to."
After the state rested, the defendant testified. He testified that on the afternoon of May 10, 2003, he had left his home on Jennifer Lane to purchase some cigarettes for his girlfriend. He was driving a 1993 GMC Black Four-Wheel Drive Pickup Truck. The defendant described the truck as having a front plate with Mickey Mouse on it, and a Bass Master sticker on the back window. A chrome tool box was in the bed of the truck. Also in the truck bed was a large wooden pallet, approximately *336 eight feet long, that hung out the back of the truck bed.
Lucas described how he turned in front of a Chevrolet Blazer driven by Shannon Mack, as she was waiting at a red light on U.S. Highway 80. He was in the left lane. A short distance later, as the Blazer pulled up alongside the defendant's truck, the defendant waved at Mack. In fact, Lucas testified that he waves at everyone, but he denied exposing his genitals to Mack at any time.
Lucas further testified that his windows were up, and they were tinted to the point that they were almost black. He also described how it was almost impossible for him to have raised his pelvis up above the window, as described by Mack, and not lose control of his truck because of the four-wheel drive and large tires on the truck. During his testimony, the defendant identified nine photographs of his truck taken by his mother and father. When the defendant's counsel sought to introduce the photographs into evidence, the trial court sustained the state's lack of proper foundation objection.
The defense's next witness was Bonnie Anderson, who was called as a character witness. She had not been on the defendant's original witness list, but she was called after the defendant's other witnesses had been excluded by the trial court. She testified that she knew the defendant all of her life. As Anderson was being questioned about the defendant's character, the state objected, asserting Anderson could not testify if she had been contacted by any of the witnesses excluded by the trial court. The jury was removed, and the trial court questioned Anderson about her knowledge of the case and determined that she only had a personal opinion of the defendant's character, not the defendant's reputation in the community. The trial court excluded Anderson from testifying as to the defendant's character.
The next witness was Janet Fuller. Fuller was also contacted the night before to be a character witness for the defendant. Fuller testified that she did not know anyone in the community other than the defendant and his family. When Fuller attempted to testify that the defendant has a reputation in the community for being honest, the state objected. The trial court found that "honesty is not a character trait necessary in this particular offense. Character evidence only with regard to moral fitness is relevant to the matter before the court.... The jury will be instructed to disregard the last question and response by the witness." Fuller then testified that the defendant was a person of good moral character and was a law-abiding person. With Fuller's testimony, the defense rested.
The jury found the defendant guilty of obscenity. The trial court ordered a PSI. At the sentencing, the trial court sentenced the defendant to three years at hard labor. The three-year hard labor sentence was suspended, and the defendant was placed on three years active supervised probation with special conditions. The defendant was to serve a full 90 days in the Bossier Parish Jail. Upon release, the defendant was to enroll in and complete sexual abuse counseling as approved by the court, have no contact with the victim, pay monthly probation fees, and register and report under the Sexual Offender Act.
The defendant filed a motion to reconsider the sentence, asserting the 90-day sentence was excessive, and further stating, "Defendant herein believes that suspension of the three-year hard labor sentence and the placing of defendant on active probation for three years is more *337 than sufficient for the crime of which he was convicted."
This appeal ensued. After the record was lodged and the original briefs were filed, this court, in an order dated October 28, 2004, noted a possible error patent in the trial court ordering the defendant to register as a sex offender for a conviction of obscenity. The defendant and the state were ordered to file briefs. In brief, both the state and the defendant acknowledged that the trial court could not order the defendant to register as a sex offender.

DISCUSSION

Sufficiency of Evidence
In this assignment of error, the defendant alleges that the evidence presented was insufficient to sustain a guilty verdict of obscenity. To prove the charge of obscenity in the present case, the state had to show that the defendant intentionally exposed "the genitals, pubic hair, anus, vulva, or female breast nipples in any public place" and in a manner intended to arouse "sexual desire or which appeals to prurient interest or is patently offensive." La. R.S. 14:106(A)(1).
The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the defendant guilty of both elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Shannon Mack testified that as she was driving alongside the defendant's truck on May 10, 2003, she observed the defendant raise his pelvis up above the truck window where she could see him masturbating his exposed penis. The defendant's counsel vigorously challenged the victim's story, and the defendant testified, admitting driving by the victim, but denying that he had exposed himself to her.
It is clear the jury chose to believe the victim's version of the incident. This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255. Consequently, the evidence, when viewed in a light most favorable to the prosecution, could allow a reasonable fact-trier to find the defendant guilty of intentional exposure of his genitalia in a public place in a manner that was with the intent to arouse sexual desire or was patently offensive.
This assignment is therefore without merit.

Disqualification of Witnesses
Lucas argues the trial court's order excluding all of his witnesses from testifying was based on insufficient evidence and deprived him of a fair trial.
The state argues the trial court's action was not an abuse of discretion, and if it was, the appropriate action would be to remand the case for an evidentiary hearing to determine the materiality of the testimony to the defendant's case.
We find that the trial court violated defendant's constitutional right to compel the attendance of witnesses and to present his defense by disqualifying all of his witnesses *338 for a perceived violation of a sequestration order.
La. C.E. art. 615 provides:
A. As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
B. Exceptions. This Article does not authorize exclusion of any of the following:
(1) A party who is a natural person.
(2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney.
(3) A person whose presence is shown by a party to be essential to the presentation of his cause such as an expert.
(4) The victim of the offense or the family of the victim.
C. Violation of exclusion order. A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness.
The record shows that pursuant to La. C.E. art. 615, all of the witnesses, including the defendant's four witnesses, were placed under the "rule of sequestration." A reading of the trial record shows the trial court advising the witnesses that they would not be allowed in the courtroom to hear the other witnesses' testimony, and that they could not "discuss the testimony of another witness with anyone."
On the late afternoon of the first day of trial, the state requested a hearing on whether the defendant's four witnesses had violated the trial court's "rule of sequestration." The state produced an employee of the district attorney's office who testified that she saw the defendant's four witnesses laughing as one of them did a demonstration with his body that she perceived as copying the actions of the defendant in the incident at issue in the trial. She did not hear the witnesses discussing the case. There is no evidence that the defendant was aware of the witnesses' actions. There is also no evidence that any of the witnesses ever heard or watched the testimony in the courtroom.
At the hearing on the matter, all of the defendant's witnesses denied discussing their testimony with any of the other witnesses, each giving a varying account of what did or did not happen in the hallway. A couple of the witnesses attributed the "demonstration" to Sonny Clary, a character witness for the defendant who had only arrived at the court an hour or so earlier. These witnesses testified the conversation was either about football or the halftime show involving Janet Jackson's wardrobe malfunction. The trial court found none of the witnesses to be truthful, and further ruled that when the witnesses violated the rule of sequestration, "the only thing the Court can do is limit their testimony based upon what they're going to testify to." The trial court barred all of the witnesses from testifying at trial.
The trial court's ruling was based on clear errors of law. First, disqualification of the witnesses was not the only option available to the trial court. La. C.E. art. 615(C) provides:
C. A court may impose appropriate sanctions for violation of its exclusion order including contempt, appropriate *339 instructions to the jury, or when such sanctions are insufficient, disqualification of the witness.
As stated in the comments to La. C.E. art. 615:
(f) Disqualification, is the most drastic remedy. It precludes a party from adducing perhaps vital evidence and deprives the jury of the benefit of the witness' testimony. When a party has had no knowledge of the violation and has played no role in bringing it about, disqualification unjustly impairs his case. In a criminal case, the exclusion of a defense witness may violate the defendant's right to call witnesses on his behalf. Washington v. Texas, 338 [388] U.S. 14[, 87 S.Ct. 1920, 18 L.Ed.2d 1019] (1967). Cf. Brooks v. Tennessee, 406 U.S. 605[, 92 S.Ct. 1891, 32 L.Ed.2d 358] (1972). The Louisiana Supreme Court stated, in State v. Jones, 354 So.2d 530, 532 (La.1978): "Excluding the witness's testimony, in the absence of a sequestration violation with the consent or knowledge of the defendant or his counsel, is not a constitutionally permissible means of insuring reliable testimony." Federal courts have adopted a similar view. Braswell v. Wainwright, 463 F.2d 1148 (5th Cir.1972). See also United States v. Shaefer[Schaefer], 299 F.2d 625 (7th Cir.1962), cert. denied 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962); Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893). Federal courts have provided collateral relief and reversed convictions where defense witnesses were excluded. E.g., Barnard v. Henderson, 514 F.2d 744 (5th Cir.1975).
Even if the evidence presented to the trial court was sufficient to find the witnesses had discussed the case, excluding all of the defendant's witnesses was not the only option available. It is the last option available. This is particularly true in cases where the evidence shows that the defendant neither consented to, nor had any prior knowledge of the infraction by his witnesses. To automatically exclude all of a party's witnesses without any review of other possible appropriate sanctions, "... is not a constitutionally permissible means of insuring reliable testimony." State v. Jones, supra, at 532.
The second error by the trial court was to shift the burden of proof in the hearing to the defendant by ruling that it would automatically exclude the witnesses unless the defendant could produce evidence to support a reason not to exclude the witnesses. The purpose of sequestration is to assure that a witness testifies as to his own knowledge, to prevent witnesses from being influenced by the testimony of others, and to strengthen the role of cross-examination in developing facts. State v. Barber, 30,019 (La.App.2d Cir.1/21/98), 706 So.2d 563, writ denied, XXXX-XXXX (La.10/9/98), 726 So.2d 24. The mere fact that a witness speaks to other witnesses does not establish a violation of the order of sequestration and does not show possible prejudice. State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218; State v. Armstead, 432 So.2d 837, 842 (La.1983). Exclusion of witnesses would not be an appropriate sanction without a showing of how the infraction prejudiced the opposing side's right to cross-examine the witnesses and develop needed facts in the case.
In the present case, the state asserted the motion. Accordingly, the state, as the injured party, should have had the burden of proving not just that a sequestration violation occurred, but also how the violation prejudiced its case before being entitled to having witnesses excluded. The state provided the trial court with no evidence or argument as to how the witnesses' testimony was tainted by the *340 violation or how its ability to cross-examine these witnesses was in any way hampered or prejudiced by the violation. State v. Jones, supra; State v. Strickland, supra. Without any showing, by a preponderance of the evidence, that a sequestration violation occurred and that the violation substantially prejudiced his case, a complaining party is not entitled to having his opponent's witnesses excluded from the trial.
In brief, the state argues that if this court were to find the witnesses were improperly excluded, the matter should be remanded for an evidentiary hearing to determine whether the witnesses' testimony would have been material, citing State v. Jones, supra. State v. Jones, supra, can be readily distinguished from the facts of the present case. In State v. Jones, supra, the state chose not to use a subpoenaed witness, who was not sequestered and allowed to remain in the courtroom. After the trial had progressed, the defendant attempted to call the witness, but the trial court excluded the witness from testifying. The court remanded the matter for an evidentiary hearing on the materiality of the witness' testimony, since the record was silent as to what he would have testified about.
In the present case, all of the defendant's witnesses were excluded, thereby virtually eliminating the defendant's constitutional right to compel witnesses to testify on his behalf. Unlike in State v. Jones, supra, the present record shows the defendant was prejudiced by the exclusion of all of his witnesses. For example, the defendant repeatedly attempted to introduce photographs of his truck into evidence to contradict the victim's version of the story. But, the defendant could not lay the foundation for the introduction of the photographs, since the photographs had been taken by excluded witnesses. The defendant testified he was home by the time that the victim first called 911. He also testified about a large wooden pallet being in the back of the truck at the time of the alleged incident, which was not seen by the victim. But, his girlfriend, who was home when the defendant returned, was excluded from testifying.
The record shows the only witnesses who testified on the defendant's behalf had first been asked to testify the evening after the defendant's witnesses had been excluded from testifying. Both were character witnesses only. In light of the complete exclusion of the defendant's witnesses without any showing that the witnesses actually discussed their testimony with each other, and without any showing as to how the state was prejudiced by the witnesses' misdeeds, nothing in the record supports the complete abrogation of the defendant's constitutional right to call witnesses and present a defense.
Consequently, we reverse the defendant's conviction and sentence and remand this matter for a new trial. This finding pretermits a discussion of the remaining issues.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are reversed for error in excluding the defendant's witnesses from testifying, and the matter is remanded for a new trial.
REVERSED AND REMANDED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, CARAWAY, and MOORE, JJ.
Rehearing denied.