# NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 0817

STATE OF LOUISIANA

VERSUS

BRHIAN THOMAS

Judgment Rendered: **JAN 0 9 2020**

* * * * * * *

APPEALED FROM THE SEVENTEENTH JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF LAFOURCHE
STATE OF LOUISIANA
DOCKET NUMBER 570380

HONORABLE F. HUGH LAROSE, JUDGE

* * * * * * *

Kristine M. Russell
District Attorney
and
Shaun George
Assistant District Attorney
Thibodaux, Louisiana

Attorneys for Appellee
State of Louisiana


Samuel H. Winston
Kara A. Larson
New Orleans, Louisiana

Attorneys for Defendant/Appellant
Brhian Thomas

**BEFORE: McDONALD, THERIOT, and CHUTZ, JJ.**

**McDonald, J.**

The defendant, Brhian Thomas, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1. He pled not guilty and, following a jury trial, was found guilty as charged. He filed a motion for postverdict judgment of acquittal, which was denied. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant filed a motion to reconsider sentence, which was denied. The defendant now appeals, designating four assignments of error. We affirm the conviction and sentence.

## FACTS

Javonnie Raymond and Tarisha Thomas were in a relationship. They had a three-year-old son together. Tarisha was also in a relationship with the defendant. They had all known each other for years, and Javonnie and the defendant were aware that Tarisha was in relationships with each of them. Tarisha was staying with the defendant in his trailer at Solar Trailer Park in Thibodaux, Louisiana. During this time, Javonnie had given Tarisha $2,500 to purchase a trailer for Javonnie and Tarisha to live in. Tarisha never bought the trailer. She gave Javonnie some, but not all, of the money back that he had given her.

On September 4, 2017, a little after 1:00 a.m., Javonnie and his brother, Deeric, drove to the defendant's trailer. Javonnie was going there to pick up his son and to get the remaining money that Tarisha owed him. Deeric stayed in the car. Javonnie knocked on the side of the trailer, the defendant answered, and Javonnie told him why he was there. While Javonnie waited in the yard, the defendant went back into the trailer to get Tarisha, who was sleeping and had already been awakened by her son, who had told Tarisha that Javonnie was there. Tarisha and the defendant then went outside, and Javonnie began talking to Tarisha. Javonnie told Tarisha that he thought she was not with the defendant

2

anymore. Tarisha replied that she was not with the defendant. Angered by this, the defendant asked Tarisha what she meant by that comment. The defendant then turned his attention to Javonnie and asked him if he wanted to fight. Javonnie replied he did not want to fight. The defendant then struck Javonnie in the face and wrestled him to the ground. The impact caused Javonnie's shoulder to become dislocated. The defendant kept striking Javonnie while he was on the ground. Javonnie called out to his brother Deeric.

Deeric got out of the car and tackled the defendant off of Javonnie. The defendant and Deeric then began wrestling on the ground. Moments later, Deeric got off of the defendant and tried to get away. The defendant then tackled Deeric. According to Javonnie, the defendant then told Tarisha to give him the gun. Deeric and Javonnie ran away in different directions. Deeric slipped and fell. When he got up and started to run again, the defendant shot him in the upper right back area.

Deeric was brought to the hospital, where he died. The doctor who performed the autopsy on Deeric testified that the bullet entered his upper right back and affected the organs of the abdomen, causing extensive injury. The bullet traveled downward, forward, and to the left, and came to rest in the left pelvis.

When the police got to the scene, the defendant falsely informed them that the shooter had fled on foot. The defendant also told deputies the "subject" had left in a dark colored vehicle. After being questioned a few times at the scene, Tarisha identified the defendant as the shooter and was taken in for more questioning. At some point, as more people started to gather around, the defendant left the scene. Javonnie went to the hospital that night for his dislocated shoulder and told the police there what happened. The police could not find the defendant. Two days later, on September 6, the defendant turned himself in.

Javonnie and Tarisha were the only eyewitnesses who testified at trial to the defendant's shooting of Deeric. The defendant did not testify.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues that the evidence was insufficient to support his conviction of second degree murder. The defendant does not deny killing the victim, but argues that he was acting in self-defense.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. **State v. Patorno**, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent may be formed in an instant. **State v. Mickelson**, 2012-2539 (La. 9/3/14), 149 So.3d 178, 183. Because it is a state of mind, specific intent need not be proven as a fact, but may be inferred from circumstances surrounding the offense and the defendant's actions. **Mickelson**, 149 So.3d at 182. It has long been recognized that specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at

4

a person. **State v. Reed**, 2014-1980 (La. 9/7/16), 200 So.3d 291, 309, cert. denied, __ U.S. __, 137 S.Ct. 787, 197 L.Ed.2d 258 (2017). See **State v. Eby**, 2017-1456 (La. App. 1st Cir. 4/6/16), 248 So.3d 420, 424, writ denied, 2018-0762 (La. 2/11/19), 263 So.3d 1153.

In his brief, the defendant does not deny that he shot and killed Deeric. The defendant suggests, instead, that the State failed to prove he did not kill Deeric in self-defense. The defendant also suggests that he was not the initial aggressor. When he was fighting Javonnie, the defendant avers he had been unaware that Javonnie had brought his brother with him to the defendant's trailer. Thus, according to the defendant, when Deeric "ran out of the car to join the fray," the "fight became two versus one." Finally, the defendant contends that it was Javonnie who was the aggressor, given that he showed up unannounced at the defendant's home in the middle of the night.

When a defendant in a homicide prosecution claims self-defense, the State must prove beyond a reasonable doubt that the homicide was not committed in self-defense. **State v. Williams**, 2001-0944 (La. App. 1st Cir. 12/28/01), 804 So.2d 932, 939, writ denied, 2002-0399 (La. 2/14/03), 836 So.2d 135. Louisiana Revised Statutes 14:20(A)(1) provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. For appellate purposes, the standard of review for a claim of self-defense is whether a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the homicide was not committed in self-defense. **Williams**, 804 So.2d at 939; **State v. Allen**, 2015-0675 (La. App. 1st Cir. 11/9/15), 2015 WL 6951570, *3 (unpublished), writ denied, 2015-2254 (La. 3/4/16), 188 So.3d 1056.

An aggressor may not claim self-defense without showing he first withdrew

5

from the conflict in good faith and in such a manner that his adversary knew or should have known of his intention to withdraw and discontinue the conflict. La. R.S. 14:21. When a defendant asserts he acted in self-defense, the State bears the burden of establishing beyond a reasonable doubt the defendant did not act in self-defense. **Eby**, 248 So.3d at 424. On appeal, the defendant asserts herein the State failed to meet that burden.

It is true that under La. R.S. 14:20(C) the defendant had no duty to retreat. But the defendant's being in a place where he had a right to be was not dispositive of whether the defendant killed Deeric in self-defense. That is, based on the testimony of both Tarisha and Javonnie, the defendant could not have reasonably believed it was necessary to shoot and kill Deeric because he was in imminent danger of losing his life or receiving great bodily harm. See La. R.S. 14:20(A)(1).

The defendant, Javonnie, and Tarisha all knew each other very well. Tarisha was in an "open relationship" with both the defendant and Javonnie. The defendant knew Javonnie and Tarisha had a young son together. Their son was at the defendant's trailer that night. There was nothing under the circumstances, therefore, of Javonnie's arrival at the trailer about 1:00 a.m. to pick up his son and to get the rest of his money back from Tarisha that he had lent her, that could have caused such surprise or panic in the defendant that he would have felt his life was in danger. It was the defendant, according to Tarisha, who had a gun in his hand as the three of them were standing in the yard. Javonnie testified that the defendant was standing in the yard, wearing shorts, slippers, and no shirt. According to Javonnie, it was dark outside and he did not see a gun in the defendant's hand.

As both Javonnie and Tarisha made clear in their testimony, they were all just standing in the yard talking. No one was arguing, or fussing, or yelling. During their conversation, the defendant never asked Javonnie to leave. It was only when Tarisha told Javonnie that she was not seeing the defendant, *i.e.*, not in a

6

relationship with the defendant, that the defendant became angry. Upset and agitated, the defendant began arguing with Tarisha. The defendant then, unprovoked, struck Javonnie in the face and wrestled him to the ground. Javonnie dislocated his shoulder and could not defend himself. Javonnie retreated into a covered position because the defendant "kept swinging" at him. Javonnie, unable to defend himself, called out to his brother for help. Deeric got out of the car and tackled the defendant off of Javonnie. Javonnie, at this point, stood up and did nothing because he was hurt from having his shoulder dislocated.

The defendant and Deeric then began wrestling on the ground/grass. They stopped fighting and stood up. According to Javonnie, Deeric tried to back away from the defendant and "break out." The defendant, however, reengaged by tackling Deeric to the ground. The defendant then told Tarisha to give him the gun. At this, both Deeric and Javonnie began running in different directions. As Deeric was running, he slipped. Javonnie heard the defendant "rack the gun" (pushing the slide of a semi-automatic handgun to chamber a live round). As he ran, Javonnie looked back over his shoulder and saw the defendant shoot Deeric in the back with a black handgun as Deeric tried to get up and run away. Javonnie kept running and the defendant screamed out Javonnie's name and chased him. Javonnie found a place to hide in some bushes. Javonnie's cousin picked him up and took him to the hospital, where he underwent surgery for his dislocated shoulder. Javonnie spoke to the police at the hospital.

Based on the foregoing, under any scenario, the defendant was the aggressor. He was the aggressor in the first instance when he struck Javonnie and tackled him to the ground. When Deeric responded to his brother getting beaten up,[1] the

---

[1] Deeric's actions in stopping the defendant from continuing to beat on someone unable to defend himself arguably constituted defense of others. See La. R.S. 14:22.

defendant, in wrestling with Deeric on the ground, was arguably defending himself at this point. However, after the fighting had subsided and it appeared Deeric was trying to remove himself from the situation, the defendant again became the aggressor when he tackled Deeric to the ground. When the defendant armed himself with the gun and both Deeric and Javonnie began running away, the defendant could not have reasonably felt his life was in danger at this point. While he clearly had no duty to retreat, the defendant did not need to shoot a fleeing Deeric in order to save his own life. Whatever happened in those few minutes in the yard, the defendant created the difficulty that ultimately led to Deeric's death. See La. R.S. 14:21; **State v. Hunley**, 2009-2323 (La. App. 1st Cir. 5/7/10), 2010 WL 1838380, *4-5 (unpublished); **State v. Spivey**, 38,243 (La. App. 2nd Cir. 5/12/04), 874 So.2d 352, 358-59.

The guilty verdict of second degree murder indicates the jury accepted the testimony of the prosecution witnesses insofar as such testimony established that the defendant did not kill Deeric in self-defense. See **State v. Spears**, 504 So.2d 974, 978 (La. App. 1st Cir.), writ denied, 507 So.2d 225 (La. 1987). Discounting the claim of self-defense, the jury may have determined the aggressor doctrine applied, since the defendant struck the first blow unprovoked, then escalated the conflict by arming himself. See **State v. Loston**, 2003-0977 (La. App. 1st Cir. 2/23/04), 874 So.2d 197, 205, writ denied, 2004-0792 (La. 9/24/04), 882 So.2d 1167. Further, under the facts of this case, the jury may have determined that the defendant, while he had every right to be in his front yard, did not reasonably believe he was in imminent danger of losing his life or receiving great bodily harm, and did not act reasonably under the circumstances, when he shot Deeric in the back while both Deeric and Javonnie were fleeing from the defendant after the defendant armed himself. See **Loston**, 874 So.2d at 205. Neither Deeric nor Javonnie was armed with a gun. Tarisha indicated she did not see Javonnie with

8

any weapon at all.

Dr. Marianna Eserman, who performed the autopsy on Deeric, testified that the bullet entered his right upper back and came to rest in his left pelvis hip area. Deeric's diaphragm, liver, colon, intestines, and inferior vena cava vein were all hit. There was no soot or stippling found around the bullet hole on his back, which indicated Deeric was not shot at point-blank range. According to Dr. Eserman, the gun was at least two to three feet away when fired.

Based on the testimony, a rational trier of fact could have reasonably concluded that the killing of Deeric was not necessary to save the defendant from the danger envisioned by La. R.S. 14:20(A)(1) and/or that the defendant had abandoned the role of defender and taken on the role of an aggressor and, as such, was not entitled to claim self-defense. See La. R.S. 14:21; **State v. Bates**, 95-1513 (La. App. 1st Cir. 11/8/96), 683 So.2d 1370, 1377. In finding the defendant guilty, it is clear the jury rejected the claim of self-defense and concluded that the use of deadly force under the particular facts of this case was neither reasonable nor necessary. Moreover, the defendant's actions in failing to report the shooting and fleeing from the scene are not consistent with a theory of self-defense. See **State v. Emanuel-Dunn**, 2003-0550 (La. App. 1st Cir. 11/7/03), 868 So.2d 75, 80, writ denied, 2004-0339 (La. 6/25/04), 876 So.2d 829; **State v. Wallace**, 612 So.2d 183, 191 (La. App. 1st Cir. 1992), writ denied, 614 So.2d 1253 (La. 1993). Flight following an offense reasonably raises the inference of a "guilty mind." **State v. Captville**, 448 So.2d 676, 680 n.4 (La. 1984). See **Allen**, 2015 WL 6951570 at *4.

The jury can accept or reject the testimony of any witness. To resolve conflicting testimony relative to factual matters, the jury must make credibility determinations and weigh the evidence. **Eby**, 248 So.3d at 426. See **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So.3d 698, 700 (per curiam). The **Jackson** standard of review does not permit a reviewing court to substitute its own

9

appreciation of the evidence for the factfinder's, assess the credibility of witnesses, or reweigh evidence. See **State v. McGhee**, 2015-2140 (La. 6/29/17), 223 So.3d 1136, 1137 (per curiam); **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 422 (per curiam). Thus, in the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the jury, is sufficient to support a factual conclusion. **State v. Higgins**, 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict based on an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. **Eby**, 248 So.3d at 426-27.

The jury credited Javonnie's testimony, which reasonably supports its determination that the defendant shot the victim with the specific intent to kill and not in self-defense. The jury's determination was not irrational under the facts and circumstances presented. See **Ordodi**, 946 So.2d at 662. After a thorough review of the record, we find that the evidence supports the jury's unanimous guilty verdict. Any rational trier of fact, viewing the evidence presented in the light most favorable to the State, could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all elements for second degree murder. **Eby**, 248 So.3d at 427.

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues the trial court erred when it informed the jury in its jury instructions that it was to consider whether the defendant had the opportunity to retreat.

Under La. R.S. 14:20(D), the jury is prohibited from considering the possibility of retreat if the accused was not engaged in an unlawful activity and had

the right to be in the place that force was used. See **State v. Wells**, 2014-1701 (La. 12/8/15), 209 So.3d 709 (per curiam). The defendant suggests in brief that the jury was instructed to consider both the possibility of retreat "as part of an overall reasonable analysis but also instructed that [the defendant] had no duty to retreat." The defendant concedes that defense counsel made no objection to the jury instructions as given.

Considering that there is no objection in the record to the instructions on retreat, we find that the issue was not preserved for review. An alleged error in the jury instruction is not preserved for appeal in the absence of a contemporaneous objection. La. Code Crim. P. art. 841; **State v. Rouser**, 2014-0613 (La. App. 4th Cir. 1/7/15), 158 So.3d 860, 869.

Moreover, it is not clear that the jury instructions were incorrect. In pertinent part, the trial court provided:

> One, the possibility of avoiding the necessary, I'm sorry, the necessity of taking human life by retreat, provided however, that a person who is not engaged in any unlawful activity and is in a place where he has a right to be has no duty to retreat before using deadly force to save himself from the danger of losing his life or receiving great bodily harm. He may stand his ground and meet force with force.

While this charge was in keeping with La. R.S. 14:20(B) and (C), the trial court did not explicitly inform the jury, per La. R.S. 14:20(D), that no finder of fact shall be permitted to consider the possibility of retreat.[2] But given that the trial court is obligated by La. Code Crim. P. art. 802(1) to charge the jury on the law applicable to the case, including every phase of the case supported by the evidence whether or not accepted as true, it is not clear in this case that the defendant was

_____

[2] It should also be noted that while it is clear closing arguments do not constitute evidence, both the prosecutor and defense counsel in closing arguments explained to the jury that the defendant had no duty to retreat. Defense counsel went into more detail, explaining that there was no duty to retreat before using deadly force to save oneself from the danger of losing his life or receiving great bodily harm. Defense counsel further informed the jury that when it began deliberating, it could not take into account whether or not the defendant should or should not have attempted to retreat. Later, defense counsel again informed the jury that "this man did not have a duty to retreat and you all cannot consider that as a factor."

even entitled to a jury charge for self-defense. The defendant did not testify at trial. Tarisha's testimony did not establish that the defendant acted in self-defense, and Javonnie's testimony established the defendant did not act in self-defense. As such, with the aggressor doctrine appropriately applicable to this case, it is questionable whether the defendant was even entitled to a self-defense charge.

At any rate, even if the jury charge regarding the duty to retreat was erroneous, it would have constituted harmless error. In the similar jury charge scenario in **Wells**, wherein the jury was instructed to both consider the possibility of retreat and to not consider the possibility of retreat, the supreme court found that such error was subject to a harmless error analysis. **Wells**, 209 So.3d at 711-13.

Under the harmless-error test of **Chapman v. California**, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the question is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." **Chapman**, 386 U.S. at 24, 87 S.Ct. at 828. See **State v. Gibson**, 391 So.2d 421, 426-27 (La. 1980). In **Sullivan v. Louisiana**, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993), the Supreme Court clarified that the inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." See **Wells**, 209 So.3d at 717-18. Given that Javonnie's uncontradicted testimony established that the defendant did not kill Deeric in self-defense, the guilty verdict was surely unattributable to any confusion that may have been created regarding the jury charge on the duty to retreat.

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, the defendant argues Javonnie should not have been allowed to remain in the courtroom and listen to the testimony of

12

Tarisha before he testified.

At the start of trial, the trial court ordered sequestration of witnesses. During trial, but prior to Javonnie and Tarisha testifying, defense counsel moved that Javonnie, despite being a family member of the victim, be sequestered during the testimony of Tarisha. According to defense counsel, this would prevent Javonnie from being able to "cater his testimony" to what he had already heard from Tarisha. Based on La. Code Evid. art. 615, the trial court denied defense counsel's motion.

The purpose of the sequestration article is to prevent witnesses from being influenced by the testimony of earlier witnesses. **State v. Chester**, 97-2790 (La. 12/1/98), 724 So.2d 1276, 1282, cert. denied, 528 U.S. 826, 120 S.Ct. 75, 145 L.Ed.2d 64 (1999). The trial judge, in his discretion, may determine the disqualification of a witness when a rule of sequestration has been violated. This ruling will not be disturbed absent an abuse of the trial court's discretion. **State v. Draughn**, 2005-1825 (La. 1/17/07), 950 So.2d 583, 621, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007).

Louisiana Code of Evidence article 615 provides in pertinent part:

**A. As a matter of right.** On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
**B. Exceptions.** This Article does not authorize exclusion of any of the following:
\*          \*          \*          \*
(4) The victim of the offense or the family of the victim.

Under La. Code Evid. art. 615(B)(4), Javonnie, as the brother of the victim, was entitled to remain in the courtroom for the duration of the trial. Without any showing, by a preponderance of the evidence, that a sequestration violation occurred and that the violation substantially prejudiced his case, a complaining party is not entitled to having his opponent's witnesses excluded from the trial.

**State v. Lucas**, 39,419 (La. App. 2nd Cir. 3/9/05), 896 So.2d 331, 340.

The defendant claims he was prejudiced by the trial court's failure to sequester Javonnie during the testimony of Tarisha. According to the defendant, after Tarisha's testifying first, Javonnie then repeatedly referred to her testimony during his cross-examination. For example, when Tarisha was asked about texts from Javonnie to her wherein Javonnie stated she was going to make him hurt her if she did not give him his money back, Tarisha responded that this type of language was typical between them and it was just the way they talked to each other. When Javonnie was later asked about similar texts where he threatened to slap Tarisha, he indicated that it was the way they talked to each other, and that Tarisha had told defense counsel that.

The defendant suggests that defense counsel was unable to cross-examine Javonnie effectively about his mental state on the night of the shooting because Javonnie had listened to Tarisha's testimony before testifying. According to the defendant, Javonnie should have testified first, which would have preserved his right to remain in the courtroom throughout the trial. Under this scenario, the defendant avers, neither witness's testimony would have impacted the other's.

The defendant has failed to show how Javonnie's presence in the courtroom during Tarisha's testimony substantially prejudiced his case. Aside from a few instances where Javonnie agreed with Tarisha, such as they talked to/texted each other in their own particular way and that all parties were aware of Tarisha's "open" relationship with the defendant and Javonnie, there was nothing in the cross-examination of Javonnie that suggested he was merely repeating what Tarisha had testified to earlier. See **State v. Jones**, 43,053 (La. App. 2nd Cir. 2/20/08), 982 So.2d 105, 117-18, writ denied, 2008-0710 (La. 10/10/08), 993 So.2d 1282. Their accounts regarding how events unfolded that night were clearly dissimilar enough to indicate Javonnie's testimony was not merely a reiteration of

Tarisha's testimony. Aside from both testifying that all three (the defendant, Javonnie, and Tarisha) were standing in the yard, there was little agreement in what followed. For example, Tarisha testified the defendant had a gun in his hand when she was talking to Javonnie. Javonnie testified he did not see the defendant with a gun. Javonnie testified that the defendant threw the first punch. Tarisha testified only that they "went at it" and that she did not know who struck whom first. Javonnie testified he heard the defendant tell Tarisha to give him the gun. Tarisha testified she never had a gun and never gave the defendant a gun

There was no evidence that the rule of sequestration was violated, as there was no evidence that these witnesses discussed the case amongst themselves. Moreover, it is clear that the testimony of Javonnie was not improperly influenced by the earlier testimony of Tarisha, but rather that he testified according to his own recollection of the same events that had been addressed during Tarisha's testimony. See **Draughn**, 950 So.2d at 621-22; **State v. Comery**, 2012-0999 (La. App. 1st Cir. 9/13/13), 2013 WL 11253298, *3 (unpublished), writ denied, 2013-2401 (La. 5/23/14), 140 So.3d 720. See also **State v. Johnson**, 2001-2334 (La. App. 4th Cir. 12/4/02), 833 So.2d 508, 511 (finding witness's presence in the courtroom during her mother's testimony was not a violation of the trial court's sequestration order where witness was a victim of the offense, as well as a family member of another victim, and her presence in the courtroom did not affect her testimony).

Accordingly, this assignment of error is without merit.

### ASSIGNMENT OF ERROR NO. 4

In his fourth assignment of error, the defendant argues that his life sentence is excessive.

The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive.

**State v. Sepulvado**, 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. **State v. Livous**, 2018-0016 (La. App. 1st Cir. 9/24/18), 259 So.3d 1036, 1044, writ denied, 2018-1788 (La. 4/15/19), 267 So.3d 1130. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. **State v. Scott**, 2017-0209 (La. App. 1st Cir. 9/15/17), 228 So.3d 207, 211, writ denied, 2017-1743 (La. 8/31/18), 251 So.3d 410. Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. **State v. Brown**, 2002-2231 (La. App. 1st Cir. 5/9/03), 849 So.2d 566, 569.

The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. **State v. Lanclos**, 419 So.2d 475, 478 (La. 1982); **Scott**, 228 So.3d at 211. The trial judge should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. **State v. Jones**, 398 So.2d 1049, 1051-52 (La. 1981); **State v. Spikes**, 2017-0087 (La. App. 1st Cir. 9/15/17), 228 So.3d 201, 204-05.

For the defendant's second degree murder conviction, the trial court imposed the mandatory life sentence. The defendant argues in brief that under the facts

16

developed at trial, his life sentence without parole is unconstitutionally excessive. According to the defendant, life imprisonment is grossly disproportionate to the situation that occurred in this case.

In **State v. Dorthey**, 623 So.2d 1276, 1280-81 (La. 1993), the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated by La. R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he has the option, indeed the duty, to reduce such sentence to one that would not be unconstitutionally excessive. In **State v. Johnson**, 97-1906 (La. 3/4/98), 709 So.2d 672, 676-77, the Louisiana Supreme Court reexamined the issue of when **Dorthey** permits a downward departure from the mandatory minimum sentences in the Habitual Offender Law.

Mandatory sentences have been repeatedly upheld as constitutional and consistent with the federal and state constitutional provisions prohibiting cruel, unusual or excessive punishment. **Scott**, 228 So.3d at 212. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. **Johnson**, 709 So.2d at 676.

Considering the nature of the crime and the mandatory life sentence at issue, we find no abuse of discretion by the trial court. The defendant does not mention **Dorthey** or **Johnson** in brief, but to the extent he is suggesting his situation is unique, he has not proven by clear and convincing evidence that he is exceptional such that the sentence would not be meaningfully tailored to the culpability of the

offender, the gravity of the offense, and the circumstances of the case. <u>See</u> **Johnson**, 709 So.2d at 676. Accordingly, the sentence imposed by the trial court is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive.

This assignment of error is without merit.

## DECREE

For the foregoing reasons, the conviction and sentence are affirmed.

**CONVICTION AND SENTENCE AFFIRMED.**